**Slip Op. 02 - 90**

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  GREGORY W. CARMAN, CHIEF JUDGE

| | |
|---|---|
| YANCHENG BAOLONG BIOCHEMICAL PRODUCTS COMPANY, LTD., <br><br>       **Plaintiff,** <br><br>    v. <br><br> UNITED STATES OF AMERICA, <br><br>       **Defendant,** <br><br>    **and** <br><br> CRAWFISH PROCESSORS ALLIANCE, <u>et al.</u>, <br><br>       **Defendant-Intervenors.** | **Court No. 01-00338** |

[Upon consideration of *Freshwater Crawfish Tail Meat from the People's Republic of China; Notice of Final Results of Antidumping Duty Administrative Review and New Shipper Reviews, and Final Partial Rescission of Antidumping Duty Administrative Review*, 66 Fed. Reg. 20,634 (Apr. 24, 2001), *amended by* 66 Fed. Reg. 30,409 (June 6, 2001) (*Final Results*), Plaintiff's Motion for Judgment Upon the Agency Record, Defendant's Opposition to Plaintiff's Motion for Judgment Upon the Agency Record, Plaintiff's Reply Brief in Support of Motion for Judgment on the Agency Record, the record, and all other pertinent documents, Plaintiff's motion is denied and the contested rescission sustained.]

*deKieffer & Horgan* (*J. Kevin Horgan, John J. Kenkel*), Washington, D.C., for Plaintiff.

*Robert D. McCallum, Jr.*, Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Mark L. Josephs*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of

Justice; *Arthur D. Sidney*, Attorney, United States Department of Commerce, of Counsel, for Defendant.

*Adduci, Mastriani & Schaumberg, L.L.P.* (*Will E. Leonard, Mark Leventhal*, *John C. Steinberger*), Washington, D.C., for Defendant-Intervenors.

August 15, 2002

## OPINION

**CARMAN, Chief Judge:**  This matter comes before the Court on a motion for judgment on the agency record filed by Yancheng Baolong Biochemical Company, Ltd. ("Plaintiff" or "YBB").  Plaintiff challenges the Department of Commerce's ("Department" or "Commerce") decision to rescind its review with respect to YBB in *Freshwater Crawfish Tail Meat from the People's Republic of China; Notice of Final Results of Antidumping Duty Administrative Review and New Shipper Reviews, and Final Partial Rescission of Antidumping Duty Administrative Review*, 66 Fed. Reg. 20,634 (Apr. 24, 2001), *amended by* 66 Fed. Reg. 30,409 (June 6, 2001) ("*Final Results*").  The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1581(c) (2000).

## BACKGROUND

On August 1, 1997, the Department published an antidumping duty order on freshwater crawfish tail meat from the People's Republic of China ("PRC").  *See Notice of Final Determination of Sales at Less Than Fair Value:  Freshwater Crawfish Tail Meat From the People's Republic of China*, 62 Fed. Reg. 41,347-02 (Aug. 1, 1997), *amended by Notice of Amendment to Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Freshwater Crawfish Tail Meat From the People's Republic of China*, 62 Fed. Reg. 48,218 (Sept. 15, 1997).  On September 30, 1999, the Department received requests for review

from, among others, respondent YBB. The Department then conducted an administrative review of the antidumping duty order for the period September 1, 1998 through August 31, 1999 and published the preliminary results of review on October 11, 2000. *See Notice of Preliminary Results of Antidumping Duty Administrative Review and New Shipper Reviews, Partial Rescission of the Antidumping Duty Administrative Review, and Rescission of a New Shipper Review: Freshwater Crawfish Tail Meat From the People's Republic of China*, 65 Fed. Reg. 60,399 (Oct. 11, 2000) (*Preliminary Results*).

Based upon information obtained at verification, Commerce determined that YBB made no sales to the United States during the period of review. *Preliminary Results*, 65 Fed. Reg. at 60,401. Instead it became apparent to Commerce that another company, Asia Europe, had made the sales of subject merchandise. *See Memorandum for File through Maureen Flannery from Jacqueline Arrowsmith and Jonathan Lyons: Verification of Yancheng Baolong Biochemical and Asia Europe in the Second Administrative Review of Freshwater Crawfish Tail Meat from the People's Republic of China (PRC)* (Sept. 29, 2000), Prop. Doc. 61, Pl.'s Pub. App. 7 at 6 ("*Verification Report*"). Commerce therefore preliminarily rescinded the review with respect to YBB in accordance with 19 C.F.R. § 351.213(d)(3) (1999), which states that the Department may "rescind an administrative review, in whole or only with respect to a particular exporter or producer, if the Secretary concludes that, during the period covered by the review, there were no entries, exports, or sales of the subject merchandise, as the case may be." *Id.* In addition, because Asia Europe failed to respond to the Department's antidumping questionnaire, the Department applied the PRC-wide rate to Asia Europe's sales of subject merchandise to the United States during the period of review. *See Preliminary Results*, 65 Fed. Reg. at 60,401.

YBB contested the Department's preliminary determination that it had made no sales to the United States during the period of review; it further argued that if the Department insisted upon Asia Europe as the seller, the Department should collapse the two affiliated companies into one entity. *See Memorandum from Joseph A. Spetrini to Bernard T. Carreau, Issues and Decision Memo for the Final Results of the Antidumping Duty Administrative Review and the Antidumping New Shipper Reviews of Freshwater Crawfish Tail Meat from the People's Republic of China* (Apr. 24, 2001), Def.'s Pub. App. Tab 12 at 26 ("*Decision Memo*"). After analyzing comments and rebuttals submitted by interested parties, Commerce published the *Final Results* on April 24, 2001, in which it rescinded the review with respect to YBB and applied the PRC-wide rate to Asia Europe. *Final Results*, 66 Fed. Reg. at 20,635. Plaintiffs thereafter timely filed a summons and complaint challenging the final results.

DISCUSSION

I. **Commerce's finding that YBB made no sales to the United States in the period of review is supported by substantial evidence on the record or otherwise in accordance with law.**

  A. **Plaintiff's Contention**

Plaintiff contends Commerce's holding that YBB did not make any sales to the United States in the period of review is not supported by substantial evidence on the record. Plaintiff claims that all transactions with U.S. customers involved only contacts with YBB. For support, Plaintiff points to exhibits of sales invoices, packing lists, bills of lading, a bank collection order, sales contracts, and certificates of origin issued by the Chinese government listing YBB as the exporter. Plaintiff acknowledges there is no information on the record, however, to explain why

two types of documents–the "customs declaration sheet for exporting cargoes," and the "Foreign Exchanges Certification Sheet by the State Foreign Exchange Administration Bureau"–show Asia Europe as the exporter. (Pl.'s Br. in Support of Mot. for J. on the Agency Record at 8.)

**B.        Defendant's Contentions**

Defendant contends substantial evidence supports Commerce's determination to rescind the administrative review of YBB because YBB did not make any sales of subject merchandise during the period of review. Defendant states that in order for Commerce to conduct an administrative review of a producer, there must be sales for export to the United States by the producer during the period of review. Absent such sales, Defendant asserts Commerce may rescind an administrative review with respect to a particular exporter or producer pursuant to 19 C.F.R. 351.213(d)(3). Defendant asserts that where an administrative review involves a non-market economy ("NME"), Commerce reviews NME trading companies rather than the manufacturers that supply them because it is the trading company that determines the price at which the subject merchandise is sold in the United States.

Defendant states that consistent with its NME practice, Commerce determined to rescind the review with respect to YBB because Asia Europe exported the subject merchandise to the United States. Defendant claims the following substantial record evidence supports Commerce's determination: (1) a management agreement between YBB and Asia Europe giving Asia Europe responsibility for export and sales activities as well as risk of loss, and agreeing that payment be made by the U.S. customer to Asia Europe's bank account; and (2) sales and shipping documents submitted by YBB demonstrating Asia Europe was the exporter. Defendant states none of the documents to which YBB refers support its claim to have made sales to the United States.

C.     Analysis

This Court finds Commerce has clearly set forth substantial evidence on the record to support its determination that YBB made no sales to the United States in the period of review. First, upon verification, Commerce determined that the sales in question for the period of review were recorded in Asia Europe's books. *Memorandum to Troy H. Cribb through Joseph A. Spetrini from Barbara E. Tillman, Yancheng Baolong Biochemical Products (Baolong Biochemical): Intent to Rescind Administrative Review* (Sept. 29, 2000), Prop. Doc. 69, Pl.'s Prop. App. 6 at 3-4 ("*Rescission Memorandum*").  Second, although much of the submitted export paperwork identified YBB as the seller, two documents for each of the sales identified Asia Europe as the seller.  *Id*.  Finally, documentation dated prior to the first sale at issue indicated that YBB was a member of the Baolong Group, which is the same as Asia Europe, making it reasonable for the Department to conclude Asia Europe controlled YBB's sales of subject merchandise to the United States.  *Id*.; *see also Decision Memo* at 26.

Plaintiff has directed this Court's attention to exhibits of sales invoices, packing lists, bills of lading, a bank collection order, sales contracts, and certificates of origin issued by the Chinese government listing YBB as the exporter.  This Court finds it reasonable that Commerce should be unpersuaded by such exhibits, as YBB submitted invoices for Asia Europe that indicated its sales were identical to those of YBB.  *Id*.  Commerce stated in its verification report that "[a]lthough [YBB] requested the review for the current [period of review] and claimed that it had made the sales of subject merchandise prior to the 'management agreement' .Asia  [sic] Europe's worksheets and accounting records for the [period of review] indicated that it was Asia Europe who had actually made the sales under review." *Decision Memo* at 27 (quoting

*Verification Report* at 6).  Accordingly, this Court finds that substantial evidence on the record supports Commerce's determination that YBB made no sales of the subject merchandise during the period covered by the review.

II.     **Commerce's determination not to treat Asia Europe and YBB as a single entity is supported by substantial evidence on the record or otherwise in accordance with law.**

A.     **Plaintiff's Contentions**

Plaintiff contends that even if YBB were not the seller or exporter, YBB should be collapsed with its affiliated company, Asia Europe, into a single entity.  For support, Plaintiff points to the Department's history of collapsing entities where one controls the other.  Plaintiff claims the Department acknowledged in the *Rescission Memorandum* that YBB and Asia Europe were affiliated and that Asia Europe controlled YBB before the first sale to the United States. Plaintiff asserts Commerce should have followed past precedent to collapse YBB and Asia Europe into one entity that requested an administrative review and exported to the United States during the period of review.

B.     **Defendant's Contentions**

Defendant contends Commerce properly determined it could not treat Asia Europe and YBB as a single entity.  Defendant asserts Commerce rejected YBB's collapsing argument because YBB failed to report the nature of its relationship with Asia Europe in a timely manner, and Asia Europe failed to respond to Commerce's questionnaires.  Defendant argues that lack of available evidence on the record precluded Commerce from examining whether the two companies should have received a single rate.

### C.      Analysis

Commerce's decision not to treat Asia Europe and YBB as a single entity is supported by substantial evidence on the record or otherwise in accordance with law.  In order to treat producers as a single entity and to determine a single weighted-average margin for that entity, Commerce must first determine whether the companies are affiliated pursuant to 19 U.S.C. § 1677(33)(F); second, it must determine whether the "producers have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities"; and third, it must determine that "there is a significant potential for the manipulation of price or production."  19 C.F.R. § 351.401(f).  In determining the latter, Commerce may consider "(i) [t]he level of common ownership; (ii) [t]he extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm; and (iii) [w]hether operations are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers."  19 C.F.R. § 351.401(f)(2).

Commerce provided two reasons it did not make such findings.  First, neither YBB nor Asia Europe provided complete information on the nature of their relationship prior to verification.  *See Decision Memo* at 28.  In its supplemental questionnaire response submitted ten days prior to the beginning of verification, YBB reported that on July 25, 1999 it had instituted a joint management contract with its main supplier, Asia Europe.  *See Rescission Memorandum* at 2; *see also Decision Memo* at 26, 28; *Verification Report* at 1-2.  Commerce noted that

> [p]ertinent information regarding this contract was either presented, or discovered at verification, too late in the course of the proceeding for the Department to ask follow-up questions or to perform any meaningful analysis.  Thus, the Department was precluded from requesting additional information or submitting supplemental questionnaires relevant to the issue of these companies' relationship and collapsing these two parties.  Further, [YBB] had previously responded to the Department's question concerning the company's relationship with other producers or exporters of the subject merchandise, and whether they shared any managers or owners, by stating that "[YBB] has no relationship with other producers or exporters of the subject merchandise.  It does not share any managers or owners."

*See Decision Memo* at 28.  Second, Commerce stated that Asia Europe had failed to respond to Commerce's questionnaire, making "it impossible for the Department to analyze completely the company and its relationship with [YBB]."  *Id.*

Plaintiff insists Commerce is required by precedent to treat YBB and Asia Europe as a single entity in this case.  Plaintiff, however, focuses upon the apparent affiliation discovered at verification without persuading this Court that Commerce could have made the determinations required by 19 C.F.R. § 351.401(f).  This Court finds that substantial evidence on the record supports Commerce's position that, absent evidence placed on the record by YBB and Asia Europe prior to verification, Commerce could not have made the determinations required for collapsing YBB and Asia Europe.

## CONCLUSION

This Court finds to be supported by substantial evidence on the record or otherwise in accordance with law Commerce's determination that YBB made no sales of subject merchandise to the United States in the period of review. This Court also finds to be supported by substantial evidence on the record or otherwise in accordance with law Commerce's decision not to treat YBB and Asia Europe as a single entity. Accordingly, Plaintiff's motion for judgment upon the agency record is denied and the contested rescission sustained.

_____
Gregory W. Carman, Chief Judge

Dated: August 15, 2002
        New York, New York