Slip Op. 03-84

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: GREGORY W. CARMAN, CHIEF JUDGE

| | |
|---|---|
| YANCHENG BAOLONG BIOCHEMICAL PRODUCTS COMPANY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant, <br><br> and <br><br> CRAWFISH PROCESSORS ALLIANCE, et al., <br><br> Defendant-Intervenors | Court No. 01-00338 |

[Pursuant to United States Court of International Trade Rule 7(e) and Rule 63, this Court issued an Order to Show Cause providing Defendant with an opportunity to present evidence why it should not be held in contempt. After consideration of the evidence presented at the hearing held on June 4, 2003, Defendant's Response to the Court's Order to Show Cause of May 21, 2003, Defendant's Response to the Court's Inquiries of June 4, 2003, Plaintiff's Memorandum on Damages to be Awarded Based on a Finding of Contempt for Violation of the Injunction Against Liquidation of Subject Entries, Defendant's Response to Plaintiff's Memorandum on Damages, and Plaintiff's Comments on Defendant's Response to the Court's Inquiries, this Court holds that Defendant's actions which resulted in the liquidation of twenty-eight entries on January 3, 10, and 17, 2003, were contumacious of this Court's order enjoining the liquidation of certain entries. Plaintiff's Motion to Clarify Or, Alternatively, Extend Injunction Against Liquidation of Entries is denied as unnecessary.]

*deKieffer & Horgan* (*J. Kevin Horgan*), Washington, D.C., for Plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *David M. Cohen*, Director, Commercial

Litigation Branch, Civil Division, United States Department of Justice; *A. David Lafer*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Paul D. Kovac*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Arthur D. Sidney*, Attorney, United States Department of Commerce, of Counsel, for Defendant.

*Adduci, Mastriani & Schaumberg, L.L.P.* (*Will E. Leonard*, *Mark R. Leventhal*, *John C. Steinberger*), Washington, D.C., for Defendant-Intervenors.

Dated: July 16, 2003

OPINION

**CARMAN**, **Chief Judge:** Before this Court are the Court's Order to Show Cause issued on May 21, 2003, and Plaintiff's, Yancheng Baolong Biochemical Products Company, Ltd. ("Yancheng"), Motion to Clarify Or, Alternatively, Extend Injunction Against Liquidation of Entries filed on November 6, 2003.  After certain facts had been revealed in the course of telephone conferences with the parties, the Court issued an Order to Show Cause providing an opportunity for the United States ("Government"), to present evidence why it should not be held in contempt of this Court's injunctive order of August 2001.  Like other courts created under Article III of the Constitution, this Court "has the inherent power to determine the effect of its judgments and issue injunctions to protect against attempts to attack or evade those judgments." *United States v. Hanover Ins. Co.*, 82 F.3d 1052, 1054 (Fed. Cir. 1996).  For the reasons set forth below, the Court holds that Defendant was in contempt of this Court's order of August 2001 when certain entries were liquidated in January 2003.

BACKGROUND

At the June 4, 2003 Show Cause Hearing, counsel for Defendant and counsel for Plaintiff agreed to the following facts.  (Hr'g Tr. at 4-5.)  In August 2001, on a consent motion, this Court

issued a preliminary injunction  ("August 2001 Preliminary Injunction"), enjoining the

liquidation of any and all unliquidated entries of crawfish tail meat from the People's Republic of

China exported by Plaintiff that were covered by *Freshwater Crawfish Tail Meat from the*

*People's Republic of China; Notice of Final Results of Antidumping Duty Administrative Review*

*and New Shipper Reviews, and Final Partial Rescission of Antidumping Duty Administrative*

*Review*, 66 Fed. Reg. 20,634 (Apr. 24, 2001) (Agreed Statement of Facts at ¶ 1.)  The injunction

was issued pursuant to 19 U.S.C. § 1516a(c)(2), which authorizes the United States Court of

International Trade ("CIT") to "enjoin the liquidation of some or all entries of merchandise

covered by a determination . . . upon a request by an interested party for such relief."  19 U.S.C.

§ 1516a(c)(2) (2000).  The August 2001 Preliminary Injunction specifically stated that Defendant

shall be enjoined from liquidating the subject entries "during the pendency of this action," and

"that the entries subject to this injunction shall be liquidated in accordance with the final court

decision as provided in 19 U.S.C. § 1516a(e).[1]"  (Aug. 2001 Prelim. Inj. at 1-2.)  The injunction

covered thirty-one entries: twenty-eight at the Port of Los Angeles, California; three at the Port of

---

[1] The full text of 19 U.S.C. § 1516a(e) is as follows:
(e) Liquidation in accordance with final decision
If the cause of action is sustained in whole or in part by a decision of the United States
Court of International Trade or of the United States Court of Appeals for the Federal
Circuit --
> (1) entries of merchandise of the character covered by the published determination
> of the Secretary, the administering authority, or the Commission, which is entered,
> or withdrawn from warehouse, for consumption after the date of publication in the
> Federal Register by the Secretary or the administering authority of a notice of the
> court decision, and
> (2) entries, the liquidation of which was enjoined under subsection (c)(2) of this
> section,

shall be liquidated in accordance with the final court decision in the action.  Such notice
of the court decision shall be published within ten days from the date of the issuance of
the court decision.

Norfolk, Virginia.  (Hr'g Tr. at 67; *see also* Def.'s Conf. Submission of 04/10/03.)

On August 15, 2002, after consideration of Plaintiff's motion for judgment upon the agency record, the Court entered judgment in favor of Defendant sustaining the Department of Commerce's ("Commerce") determination.  (Agreed Statement of Facts at ¶ 2); *see also Yancheng Baolong Prods. Co., Ltd. v. United States*, 219 F. Supp. 2d 1317 (Ct. Int'l Trade 2002), *appeal docketed*, No. 03-1059 (Fed. Cir. Nov. 5, 2002).  Plaintiff filed a Notice of Appeal to the United States Court of Appeals for the Federal Circuit ("Federal Circuit") on October 4, 2002.  (*Id*. at ¶ 3.)

On November 1, 2002, Commerce sent instructions to the United States Customs Service, now organized as the Bureau of Customs and Border Protection ("Customs"), directing Customs to liquidate the subject entries.  (Hr'g Tr. at 19.)  On November 6, 2002, Plaintiff filed a Motion to Clarify Or, Alternatively, Extend Injunction Against Liquidation of Entries ("Plaintiff's Motion to Clarify") in this Court.  (Agreed Statement of Facts at ¶ 4.)  In that motion, Plaintiff asserted that Plaintiff's counsel had been informed by Defendant's counsel that unless Plaintiff obtained an injunction pending appeal, the subject entries would be liquidated.  (Pl.'s Mot. to Clarify at 3.)  As stated in the Motion to Clarify, Plaintiff's position was "that the injunction already issued by the Court in this action remains in effect without any further intervention by the Court."  (*Id*. at 4.)  Plaintiff stated that Defendant's counsel would consent to a new injunction pending appeal.  (*Id*. at 3.)  However, according to Plaintiff, the Crawfish Processor Alliance, the Louisiana Department of Agriculture and Forestry, and Bob Odom, Commissioner, (collectively "Defendant-Intervenors") would not consent to an injunction pending appeal because of the possible effect it could have on Defendant-Intervenors' ability to collect under the statute

allowing domestic industries to receive distributions of antidumping duties.[2] (*Id*.)  Neither

Defendant-Intervenors nor Defendant responded to Plaintiff's Motion to Clarify.

On November 8, 2002, Customs sent liquidation instructions to its field offices directing

the liquidation of all shipments of the subject merchandise exported by Yancheng and entered, or

withdrawn from warehouse, for consumption during the period of review at an antidumping duty

rate of 201.63% of the entered value.  (*Id*. at ¶ 5.)  On January 3, 2003, fourteen of the subject

entries at the Port of Los Angeles were liquidated.  (*Id*. at ¶ 7.)  On January 10, 2003, one entry at

the Port of Los Angeles was liquidated.  (*Id*. at ¶ 8.)

The time for Defendant and Defendant-Intervenors to respond to Plaintiff's Motion to

Clarify expired on December 15, 2002, and the Court scheduled a telephone conference with the

parties on January 15, 2003, to discuss Plaintiff's pending motion.  (*Id*. at ¶ 9.)  At that

conference, the Court indicated that the Court considered clarification unnecessary because the

original preliminary injunction was still in effect.  (*Id*.)  On January 17, 2003, thirteen more

entries at the Port of Los Angeles were liquidated.  (*Id*. at ¶ 10.)  On the same date, January 17,

2003, Customs issued new instructions to its field offices to stop the liquidation of the entries.

(*Id*. at ¶ 11.)

Over the next several months, the parties continued settlement negotiations attempting to

resolve this matter and submitted status reports to the Court regarding the parties' continued

effort to discover the relevant facts.  (*Id*. at ¶¶ 12-19.)  On April 10, 2003, the Government

submitted a chart to the Court that listed which entries covered by the August 2001 Preliminary

---

[2] The Byrd Amendment, 19 U.S.C. § 1675c.

Injunction had been liquidated. (*Id*. at ¶ 16.) On May 5, 2003, counsel for Defendant submitted a list of the names and last known addresses of the importers and sureties involved. (*Id*. at ¶ 20.) At the request of the Court, the Government sent a letter to the importers and sureties involved notifying them that "[n]otwithstanding the Court's injunctive order issued on August 2, 2001, the government issued liquidation instructions to [Customs]." (*Id*. at ¶ 21; Letter from A. David Lafer, Senior Trial Counsel, Commercial Litigation Branch, United States Department of Justice, to Importer/Surety of 05/06/03.) Of the thirty-one entries covered by the August 2001 Preliminary Injunction, twenty-eight entries at the Port of Los Angeles were liquidated; the three entries at the Port of Norfolk remained unliquidated as of June 4, 2003. (Hr'g Tr. at 32, 67.)

On May 21, 2003, this Court issued an Order to Show Cause affording the Government an opportunity to present evidence why it should not be held in contempt of this Court's August 2001 Preliminary Injunction for issuing instructions to liquidate and for its actions on January 3, January 10, and January 17, 2003, wherein twenty-eight out of the thirty-one subject entries were liquidated.

PARTIES' CONTENTIONS

## I. Defendant's Contentions

It is the Government's position that the August 2001 Preliminary Injunction dissolved when this Court entered judgment in favor of Defendant on August 15, 2002. (Def.'s Resp. to the Ct.'s Order to Show Cause of May 21, 2003 ("Def.'s Br.") at 2, 5.) The Government contends that because liquidation was not enjoined pending appeal, Commerce was acting within its powers to instruct Customs to liquidate the subject entries on November 1, 2002, and for the liquidations to take place in January 2003. (*Id*. at 8.)

As the basis for its argument, the Government relies on *Fundicao Tupy S.A. v. United States*, 841 F.2d 1101, 1103 (Fed. Cir. 1988).[3]  In its argument, the Government focuses on the Federal Circuit's description of preliminary injunctions in *Fundicao Tupy*.  (Def.'s Br. at 8-9.)  Defendant cites the Federal Circuit's use of quoted language from MOORE'S FEDERAL PRACTICE: "[a preliminary injunction] is *ipso facto* dissolved by a dismissal of the complaint or the entry of a final decree in the cause."  (Def.'s Br. at 8-9 (quoting *Fundicao Tupy*, 841 F.2d at 1103).)

The Government contends that *Fundicao Tupy* articulates a general rule that preliminary injunctions dissolve when the CIT enters judgment on the merits.  (*Id*. at 9.)  The Government contends that *Fundicao Tupy* is "a precedential decision" regarding preliminary injunctions and that "only the [Federal Circuit] sitting en banc is empowered to overturn" that decision.  (*Id*. at 16-17 (citing *Newell Cos., Inc. v. Kenny Mfg. Co.*, 864 F.2d 757, 765 (1988)).)  Therefore, the Government contends that any opinion of the Federal Circuit issued after the 1988 decision in *Fundicao Tupy* should be construed in a manner that is consistent with the holding in *Fundicao Tupy*.  (*Id*. at 13.)

First, the Government outlines its interpretation of the holding in *Timken Co. v. United*

---

[3] In *Fundicao Tupy*, the CIT denied the plaintiff's motion for a preliminary injunction suspending liquidation.  *Fundicao Tupy*, 841 F.2d at 1102.  Noting conflicting decisions within the Court regarding preliminary injunctions, the CIT enjoined liquidation pending an interlocutory appeal to the Federal Circuit of the CIT's decision to deny the plaintiff's motion for a preliminary injunction.  *Id*. at 1103.  However, before the Federal Circuit could hear oral arguments on appeal, the CIT dismissed the plaintiff's case on the merits.  *Id*.  The Federal Circuit dismissed the plaintiff's interlocutory appeal of the CIT's decision not to grant the preliminary injunction as moot.  *Id*. at 1104.

*States*, 893 F.2d 337, 341 (Fed. Cir. 1990).[4]  According to Defendant, the *Timken* court held that if the CIT renders an opinion that is "not in harmony" with the agency's original determination, "it is necessary to suspend liquidation until there is a conclusive decision in the action." (Def.'s Br. at 11 (citing *Timken*, 893 F.2d at 341).)  The Government asserts that this type of automatic injunction following a CIT decision that is "not in harmony" with the agency's original determination is referred to as a "Timken-injunction." (*Id*.)  Defendant contends that a "Timken-injunction" continues to suspend liquidation throughout the appeals process. (*Id*.)  However, Defendant asserts that if the CIT issues a decision that is "in harmony" with the agency's original determination, there is no automatic "Timken-injunction." (*Id*.)  Therefore, any preliminary injunction issued by the CIT dissolves when the CIT enters judgment on the merits and liquidation is not suspended during the appeals process absent a new injunction pending appeal. (*Id*.)

Next, the Government attempts to distinguish the Federal Circuit's holding in *Hosiden*

---

[4] In *Timken*, the CIT denied a preliminary injunction and remanded the case to Commerce to redetermine the dumping margin. *Timken*, 893 F.2d at 338.  After remand, the CIT affirmed Commerce's redetermination and entered judgment for the Government. *Id*.  Before any appeal had been filed, the plaintiff sought a writ of mandamus to compel Commerce to publish notice of the CIT's decision under § 1516a(e), which states that "notice of the court decision shall be published within ten days from the date of the issuance of the court decision." *Id*.  The CIT granted the plaintiff's writ of mandamus ordering Commerce to publish notice of the CIT decision. *Id*. at 339.  The Government appealed the CIT's order granting the writ. *Id*. at 338.  The Government argued that a decision of the CIT was not a final decision under § 1516a(e) for the purposes of publication "until an appeal was decided by the Federal Circuit or the time for appeal had expired." *Id*. at 339.  In analyzing the text of § 1516a(e), the Federal Circuit distinguished between liquidation which required a "final decision in the action" and publication which only required a "court decision." *Id*. at 340.  The Federal Circuit held that even though a CIT decision was not 'final' for the purposes of § 1516a(e) when appeal had been taken to the Federal Circuit, Commerce was required to publish notice of a CIT decision within 10 days of issuance because § 1516a(e) did not use the word 'final' in mandating that "notice of the *court decision* shall be published within 10 days." *Id*. (emphasis added).

*Corp. v. United States*, 85 F.3d 589 (Fed. Cir. 1996)[5] from the case at bar. (*Id*. at 14-15.) The

Government contends that *Hosiden* is distinguishable because the CIT's decision in *Hosiden* was

"not in harmony" with the agency's original determination. (*Id*. at 15.) The Government

contends that "suspension of liquidation [in *Hosiden*] pending the issuance of a final and

conclusive decision [on appeal] was required following the holding in *Timken* (irrespective of

whether a preliminary injunction was in effect)." (*Id*.) The Government argues that any other

construction of *Hosiden* would be impermissible and "flatly inconsistent with the holding of

[*Fundicao Tupy*]." (*Id*. at 14.)

Similarly, Defendant contends that the Federal Circuit's 2002 decision in *Fujitsu General*

*American, Inc. v. United States*, 283 F.3d 1364 (Fed. Cir. 2002)[6] is also distinguishable from the

---

[5] In *Hosiden*, a preliminary injunction had been issued by the CIT in the underlying case. *Hosiden*, 85 F.3d at 590-591. The CIT affirmed the International Trade Commission's amended determination on remand. *Hosiden Corp. v. United States*, 852 F. Supp. 1050, 1061 (Ct. Int'l Trade 1994). In its decision, the CIT ordered Commerce to revoke an antidumping duty order against the plaintiffs, refund cash deposits, and terminate the administrative reviews within ten days. *Id*. The Government then published a "Notice of court decision" stating that the antidumping order would be revoked "if the case is not appealed, or is affirmed on appeal." *Hosiden*, 85 F.3d at 590 (quoting *Electroluminescent High Information Content Flat Panel Displays and Display Glass Therefor From Japan; Court Decision and Suspension of Liquidation*, 59 Fed. Reg. 23,690 (May 6, 1994)). Before an appeal on the merits could be heard, the plaintiff obtained a writ of mandamus from the CIT requiring Commerce to immediately revoke the antidumping duty order and end the suspension of liquidation. *Id*. Appealing the writ, the Government argued that "by statute such action shall not be taken until the issuance of a 'final decision,' defined as the decision upon appeal to the [Federal Circuit] when such appeal is taken." *Id*. The Federal Circuit vacated the writ of mandamus and held that "[i]n accordance with 19 U.S.C. § 1516a(e), entries of merchandise for which liquidation has been suspended by court order remain subject to suspension of liquidation until there is a 'final court decision in the action.'" *Id*. (citing 19 U.S.C. § 1516a(e)).

[6] In *Fujitsu*, the CIT issued a preliminary injunction suspending liquidation of the subject entries. *Fujitsu*, 283 F.3d at 1369. After granting Commerce's request for remand to recalculate the dumping margin at issue, the CIT affirmed Commerce's redetermination. *Id*. Thereafter, the plaintiff appealed to the Federal Circuit, and the Federal Circuit affirmed the CIT's decision. *Id*.

case at bar. (*Id*. at 13, 15-17.)  The Government argues that "the statements made by the *Fujitsu* Court about the preliminary injunction were not a necessary part of that Court's holding; thus, they are dicta." (*Id*. at 16.)  Defendant asserts that the suspension of liquidation in *Fujitsu* was required under *Timken*, regardless of the issuance of a preliminary injunction in that case, because the trial court had issued a decision "not in harmony" with the agency's original determination.  (*Id*.)  The Government contends that "even if the *Fujitsu* Court intended to hold that the trial court's preliminary injunction survived during the appellate process, such a holding conflicts with the appellate court's earlier decision in [*Fundicao Tupy*]." (*Id*.)  Thus, the Government contends that such a holding should not be followed.  (*Id*. at 16-17.)

The Government concludes that because the CIT's decision in this case is "in harmony" with the agency's original determination, there is no "Timken-injunction" and the general rule as expressed in *Fundicao Tupy* applies: the preliminary injunction expired when the CIT entered a decision on the merits. (*Id*. at 11, 17.)  Therefore, Defendant contends that the August 2001

---

The plaintiff's time to petition the Supreme Court for certiorari expired in October 1996. *Id*. Almost one year later, in September 1997, Commerce published notice of the Federal Circuit's decision. *Id*.  The subject entries were liquidated in November and December 1997. *Id*.  The plaintiff filed three protests which challenged the liquidation of the subject entries. *Id*.  The CIT granted summary judgment in favor of the Government holding that the CIT lacked jurisdiction to review two of the protests and dismissing the third protest on the merits. *Id*. at 1370.  The plaintiff's third protest claimed that the subject entries were already deemed liquidated under 19 U.S.C. § 1504(d) and therefore, the liquidation in 1997 was unlawful. *Id*.  Under § 1504(d), Customs must liquidate entries within six months of receiving notice of removal of the suspension of liquidation or else the entries are deemed liquidated at the rate asserted at the time of entry. *Id*. at 1370.  On appeal, the Federal Circuit affirmed the decision of the CIT holding that suspension of liquidation was not removed under § 1504(d) until there had been a "final court decision within the plain meaning of § 1516a(e)" and that "there is not a 'final court decision' in an action that originates in the [CIT] and in which there is an appeal to the Federal Circuit until, following the decision of the Federal Circuit, the time for petitioning the Supreme Court for certiorari expires without the filing of a petition." *Id*. at 1379.

Preliminary Injunction dissolved on August 15, 2002, when this Court issued its decision on the merits, and, as a result, the Government should not be held in contempt of the Court's injunction for issuing instruction to liquidate in November 2002 and for liquidating the entries in January 2003. (*Id*. at 17.) Further, Defendant argues that the August 2001 Preliminary Injunction was open to different interpretations because it merely stated that the Government was enjoined from liquidating the entries "during the pendency of the action." (*Id*. (citing Aug. 2001 Prelim. Inj. at 1).) Defendant contends that "the law is not exactly clear concerning how long an action is pending." (*Id*.)

Alternatively, the Government contends that even if the Court is unpersuaded by the arguments regarding the force and effect of the preliminary injunction, the Government cannot be held in contempt because its construction of the case law was reasonable. (*Id*.) Defendant asserts that because its application of the Federal Circuit's precedent was reasonable, it cannot be held in contempt because the Government's actions were not a "willful obstruction of justice." (*Id*.)

At the Show Cause Hearing, the Government presented the testimony of Ms. Barbara Tillman, United States Department of Commerce, Director of the Office of Antidumping, Countervailing Duty Enforcement 7. (Hr'g Tr. at 10-11.) At the hearing, the Government also asserted that it was "standard practice" to request an injunction pending appeal in cases where the CIT issues a decision "in harmony" with the agency's determination. (Hr'g Tr. at 47.) The Court asked Defendant to submit specific cases in which this took place. (*Id*.) Defendant provided the Court with a list of sixteen cases in which the CIT or the Federal Circuit issued an injunction after the CIT rendered a decision on the merits, even though a preliminary injunction had already

been issued.[7]  (Def.'s Resp. to the Ct.'s Inquiries of June 4, 2003 ("Def.'s Resp. Br.") at 2-3.) Although Defendant listed the various cases and attached copies of the orders entered, Defendant did not make any further contentions regarding those cases or their impact on the present matter. (*See id*. at 2-3.)

Additionally, the Government contends that contempt is not proper in this instance because Plaintiff was not harmed by the liquidation of the subject entries.  (Def.'s Br. at 18.) Defendant asserts that Plaintiff has the right to protest the liquidations under 19 U.S.C. § 1514 and that after a protest has been filed, the entries are "deemed suspended" until the litigation is resolved.  (*Id*. at 18-19.)  The Government asserts that such a protest is the "sole remedy" made available to Plaintiff and that "there is no cognizable harm since [P]laintiff may protest the liquidation and potentially recover the amount it claims."  (*Id*.)

## II.  Plaintiff's Contentions

In Plaintiff's Motion to Clarify, Plaintiff takes the position that the Court's August 2001 Preliminary Injunction remains in effect throughout the appeals process.  (Pl.'s Mot. to Clarify at 3-4.)  Plaintiff quotes *Fujitsu* in support of its contention that "well-established precedent" indicates that no intervention is required by the Court in order to suspend the liquidation of entries on appeal if a preliminary injunction has been entered.  (*Id*. at 4.)  Plaintiff contends that requiring the plaintiff to seek an additional injunction after the CIT has issued a decision on the merits would burden the courts and the plaintiffs.  (*Id*.)  Plaintiff asserts that relitigating the merits of every preliminary injunction would only force courts and litigants to "bear the

_____

[7]Although the Government's submission lists seventeen cases, 2 and 3 are repetitious. (*See* Def.'s Resp. Br. at 2.)

inconvenience and expense of repeatedly returning to the issue" of whether liquidation should be suspended during the action.  (*Id*.)

In Plaintiff's Comments on Defendant's Response to the Court's Inquiries of June 4, 2003 ("Plaintiff's Rebuttal"), Plaintiff contends that the Government failed to carry its burden at the Show Cause Hearing.  (Pl.'s Rebuttal at 3.)  Plaintiff questions whether or not Ms. Tillman was the appropriate witness for the Government to call because her testimony only revealed that she acted on the advice of Government counsel and did not base Commerce's instructions to liquidate upon any analysis of the legal precedent or upon any consideration of the possible implications of the August 2001 Preliminary Injunction.  (*Id*. at 2-3.)  Plaintiff also asserts that the cases that Defendant lists in its response "only serve to impeach the testimony of its own witness and undermine the credibility of [Defendant's] legal position."  (*Id*. at 3.)  Plaintiff notes that such a late submission of new evidence deprives the Court and Plaintiff "of any opportunity to explore the circumstances under which [the orders] were granted."  (*Id*.)

In addressing the issue of damages, Plaintiff requests that the Court prohibit Defendant from assessing or collecting antidumping duties on the entries that were liquidated in violation of the Court's August 2001 Preliminary Injunction.  (Pl.'s Mem. on Damages to be Awarded Based on a Finding of Contempt for Violation of the Inj. Against Liquidation of Subject Entries ("Pl.'s Mem. on Damages") at 3.)  Plaintiff cites CIT Rule 63, which provides that if a party is found in contempt of an order of this Court, the Court shall enter an order that "fixes the fine, if any, imposed by the court, which fine shall include the damages found, and naming the person to whom such fine shall be payable."  (*Id*. at 1-2 (citing USCIT R. 63).)  Rule 63 also states that "a reasonable counsel fee, necessitated by the contempt proceeding, may be included as an item of

damages." (*Id*. at 2.)

Plaintiff asserts that the liquidation in January 2003 has "rendered the litigation moot as to 90% of the subject entries." (*Id*. at 5.) Plaintiff contends that prohibiting Defendant from collecting duties for these entries would serve to deprive the Government of the benefits of its unlawful conduct. (*Id*. at 3-4.) Plaintiff also requests that the Court order Defendant to pay all attorney's fees and costs incurred in connection with this litigation, or at least all of the attorney's fees associated with counsel's efforts to enforce the Court's injunction and the costs of participating in the contempt proceedings. (*Id*. at 5-6.) In support of its request for attorney's fees, Plaintiff's counsel notes that Shapiro, d/b/a First Coast Meat and Seafood, although not a party to this action, is an importer of the subject entries protected by the August 2001 Preliminary Injunction and has paid the attorney's fees and costs associated with enforcing the Court's injunctive order. (*Id*. at 2.) Plaintiff's counsel contends that all of Shapiro's entries have been liquidated and that but for Defendant's unlawful liquidations, Shapiro would not have accumulated these fees. (*Id*. at 2, 5-6.)

Lastly, Plaintiff contends that Defendant's claim regarding protesting these liquidations under 19 U.S.C. § 1514 is without merit. (Hr'g Tr. at 57-58.) Plaintiff asserts that a protest is not the appropriate mechanism to enforce an injunctive order of this Court. (*Id*. at 59.) Plaintiff contends that protests are used to challenge certain actions of Customs, but in this instance, Customs was merely following Commerce's instructions to liquidate and the protest mechanism is not appropriate for challenging the instructions of Commerce. (*Id*. at 58.) Plaintiff notes that the Government's witness, Ms. Tillman, testified that she was unaware of any instance in which Customs was able to overrule a decision by Commerce. (*Id.*) Therefore, Plaintiff contends that a

finding of contempt by this Court is the only appropriate remedy in this case. (*Id.*)

ANALYSIS

To establish liability for civil contempt, three elements must be proven by clear and convincing evidence: (1) a valid order of the court existed; (2) Defendant had knowledge of the order; and (3) Defendant disobeyed the order. *Ammex, Inc. v. United States,* 193 F. Supp. 2d 1325, 1327-1328 (Ct. Int'l Trade 2002) (citations omitted). A court should not hold a party in contempt if there is a "fair ground of doubt as to the wrongfulness of the [party's] actions." *Id.* at 1328 (alteration in original) (citing *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1173 (Fed. Cir. 1986)).

"The absence of wilfulness does not relieve a party from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) (citing *United States v. United Mine Workers*, 330 U.S. 258, 303-304 (1947); *Penfield Co. of Cal. v. Sec. & Exch. Comm'n*, 330 U.S. 585, 590 (1947); *Maggio v. Zeitz*, 333 U.S. 56, 68 (1948)). The purpose of civil contempt is remedial; therefore, the intent of the defendant does not matter. *Id.* at 191 ("An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently.").

**1. A valid order of the Court existed.**

The first issue for this Court to decide is whether this Court's August 2001 Preliminary Injunction was a valid court order still in effect at the time of Defendant's actions in November 2002 and January 2003. Under § 1516a(e), once enjoined, liquidation may occur only after a

"final court decision in the action." 19 U.S.C. § 1516a(e). As discussed below, the Court holds

that the decision of August 15, 2002, sustaining Commerce's determination, was not a "final

court decision in the action" as required for liquidation under § 1516a(e). After consideration of

the Federal Circuit's holdings in *Timken*, *Hosiden*, and *Fujitsu* and the language of § 1516a, the

Court finds that the August 2001 Preliminary Injunction was a valid court order suspending

liquidation throughout the appeals process.

The August 2001 Preliminary Injunction was issued "pursuant to 19 U.S.C.

§ 1516(c)(2)." (Aug. 2001 Prelim. Inj. at 1.) The injunction states that the Government is

enjoined from liquidating the subject entries "during the pendency of this action" and that

"entries subject to this injunction shall be liquidated in accordance with the final court decision

as provided in 19 U.S.C. § 1516a(e)." (*Id*. at 1-2.) The CIT does not grant preliminary

injunctions suspending liquidation in antidumping and countervailing duty cases under the

auspices of the Court's general equitable powers. Rather, the Court has been instructed by

Congress that such injunctive relief may be granted in antidumping and countervailing duty cases

upon a proper showing: "the [CIT] may enjoin the liquidation of some or all entries of

merchandise covered by a determination . . . upon a request by an interested party for such relief

and a proper showing that the relief requested should be granted under the circumstances." 19

U.S.C. § 1516a(c)(2). The Federal Circuit has instructed that this Court must weigh four factors

to determine if a "proper showing" to grant such injunctions has been made: (1) the immediate

and irreparable harm that the moving party will suffer absent the injunction; (2) the likelihood of

success on the merits; (3) the public interest served by the injunction; and (4) the balance of

hardship favors the moving party. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.

Cir. 1983) (citations omitted); *see also OKI Elec. Indus. v. United States*, 669 F. Supp. 480, 483

(Ct. Int'l Trade 1987) (citations omitted).  Once enjoined under § 1516a(c)(2), liquidation of the

entries must proceed under subsection (e) which reads:

> If the cause of action is sustained in whole or in part by a decision of the United
> States Court of International Trade or the United States Court of Appeals for the
> Federal Circuit–
>> (1) entries of merchandise . . . entered . . . after the date of publication in
>> the Federal Register . . . of a notice of the court decision, and
>> (2) entries, the liquidation of which was enjoined under subsection (c)(2)
>> of this section,
>
> shall be liquidated in accordance with the final court decision in the action.  Such
> notice of the court decision shall be published within ten days from the date of
> issuance of the court decision.

19 U.S.C. § 1516(a)(e).  Therefore, until there is a "final court decision" within the meaning of

§ 1516a(e), the liquidation of the entries remains suspended.  As the case law supports, in order

to give full effect to § 1516a(e), liquidation must remain suspended under a preliminary

injunction issued pursuant to § 1516a(c)(2) until the parties have exhausted their appeals.

The Court disagrees with Defendant's analysis of the Federal Circuit precedents on this

issue.  This Court has reasoned that *Timken* was concerned with avoiding the "yo-yo" effect that

would accompany switching between Commerce's original determination, an amended

determination approved by the CIT after remand, and a possible subsequent decision by the

Federal Circuit.  *LaClede Steel Co. v. United States*, 928 F. Supp. 1182, 1186-1187 (Ct. Int'l

Trade 1996) (citing *Timken*, 893 F.2d at 342); *see also Melamine Chems., Inc. v. United States*,

732 F.2d 924, 934 (Fed. Cir. 1984).  Here, Defendant is asking this Court to find that the

preliminary injunction dissolved after the CIT's decision, thus ignoring a possible subsequent

decision by the Federal Circuit.  In its submission, the Government overlooks the plain language

of § 1516a(e) and instead draws what it describes as a distinction between the treatment of injunctions following decisions of the CIT that are "in harmony" and those that are "not in harmony" with the agency's determination. (Def.'s Br. at 11, 15, 16.)

Contrary to the Government's assertion that *Timken* created a new type of injunction, in fact, the Federal Circuit in *Timken* interpreted and applied the statutory language of § 1516a(e). *See Timken*, 893 F.2d at 339-341. After a detailed analysis of the statute's language and legislative history, the Federal Circuit determined "what is meant by the word 'final' in the heading and the body of § 1516a(e)." *Id*. at 339. The court concluded that "[w]e are of the opinion that an appealed CIT decision is not a 'final court decision' within the plain meaning of § 1516a(e)." *Id*. The Federal Circuit was persuaded by "the fact that the term 'final court decision' must be read together with the words that follow, specifically, 'in the action.' An 'action' does not end when one court renders a decision, but continues through the appeal process." *Id*. The Federal Circuit determined that "§ 1516a(e) does not require liquidation in accordance with an appealed CIT decision, since that section requires that liquidation take place in accordance with the final court decision in the action." *Id*. at 340. However, the Federal Circuit distinguished between § 1516a(e)'s requirements for liquidation "in accordance with the final court decision in the action" and the requirements for publication of the "notice of the court decision." *Id*. at 340. The Federal Circuit held that Commerce was required to publish notice of CIT decisions within ten days of issuance because § 1516a(e) does not use the word 'final' in mandating that "'notice of the *court decision* shall be published within ten days from the date of issuance.'" *Id*. at 340 (emphasis added) (quoting 19 U.S.C. § 1516a(e)).

*Timken* did not create a new type of injunction; rather, the Federal Circuit interpreted the

meaning of "final court decision in the action."  *Id*.  The Federal Circuit reasoned that "final" under § 1516a(e) must be given the same meaning as "final" under 28 U.S.C. § 2645(c), which states that "[a] decision of the [CIT] is final and conclusive, unless retrial or rehearing is granted . . . or an appeal is taken to the [Federal Circuit]."  *Id*. at 339-340 (quoting 28 U.S.C. § 2645(c)).  The *Timken* court held that in order to satisfy the requirements for liquidation under § 1516(e), a CIT decision must be conclusive: "the decision can no longer be attacked, either collaterally or by appeal."  *Id.* at 339.

Although the *Timken* court stated that "[i]f the CIT (or this court) renders a decision which is not in harmony with Commerce's determination, then Commerce must publish notice of the decision within ten days of *issuance*," the Federal Circuit continued that "§ 1516a(e) indicates that if the CIT (or this court) issues such an adverse final decision, then all entries after publication of notice of that adverse decision will be liquidated in accordance with the *final*, i.e. *conclusive*, court decision in the action.  However, since there is no way to know what the *conclusive* decision will be at the time notice of the CIT decision is published, it is necessary to suspend liquidation until there is a conclusive decision in the action."  *Id.* at 341.   Dissolving the preliminary injunction after an "in harmony" CIT decision would allow liquidation to occur immediately, possibly depriving the Federal Circuit of jurisdiction and the opportunity to issue an "adverse decision."  As the Federal Circuit held in *Zenith*, the Federal Circuit no longer has jurisdiction to decide a case if the subject entries have been liquidated.  *Zenith*, 710 F.2d at 810.

This Court is unpersuaded by Defendant's contention that the August 2001 Preliminary Injunction was ambiguous because the law is "not exactly clear concerning how long an action is pending."  (Def.'s Br. at 17 (citing Aug. 2001 Prelim. Inj. at 1).)  In *Timken*, the Federal Circuit

resolved this ambiguity: "An 'action' does not end when a court renders a decision, but continues through the appeal process." *Timken*, 893 F.2d at 339.

The later decisions of the Federal Circuit also support this Court's finding that the August 2001 Preliminary Injunction was a valid court order suspending liquidation throughout the appeals process. In *Hosiden*, the Federal Circuit vacated the CIT's writ of mandamus and held that "[i]n accordance with 19 U.S.C. § 1516a(e), entries of merchandise for which liquidation has been suspended by court order remain subject to suspension of liquidation until there is a 'final court decision in the action.'" *Hoisden*, 85 F.2d at 590 (citing 19 U.S.C. § 1516a(e)). The Federal Circuit reasoned that "[s]tatute and precedent are clear that the decision of the [CIT] is not a 'final court decision' when appeal has been taken to the Federal Circuit." *Id*. at 591. The Federal Circuit quoted *Timken* in concluding that "§ 1516a(e) requires that liquidation, once enjoined, remains suspended until there is a '*conclusive* court decision which decides the matter, so that subsequent entries can be liquidated in accordance with that conclusive decision.'" *Id*. (quoting *Timken*, 893 F.2d at 342).

In 2002, the Federal Circuit explicitly affirmed the CIT's holding that a preliminary injunction granted by the Court suspending liquidation did not dissolve until "the time for petitioning the Supreme Court for a writ of certiorari expired." *Fujitsu*, 283 F.3d at 1379. Although the court considered many questions in *Fujitsu*, the pertinent determination is the Federal Circuit's holding that the "removal of the suspension of liquidation" under § 1504(d) did not occur until after the time for petition for writ of certiorari had expired. *Id*. at 1378-1379. Citing its decision in *Timken*, the Federal Circuit reasoned that suspension of liquidation was not "removed" until there had been a "final court decision within the plain meaning of § 1516a(e)."

*Id.* at 1379 (citing *Timken*, 893 F.2d at 339). The court stated that "there is not a 'final court decision' in an action that originates in the [CIT] and in which there is an appeal to the Federal Circuit until, following the decision of the Federal Circuit, the time for petitioning the Supreme Court for certiorari expires without the filing of a petition." *Id.* Nowhere in *Hosiden* or in *Fujitsu* does the Federal Circuit focus on the "in harmony" or "not in harmony" aspect of the CIT's decisions. Rather, the deciding factor in this line of cases is the finality of a court decision for the purposes of liquidation under § 1516a(e).

Further, the Government's reliance on *Fundicao Tupy* is misplaced. The Federal Circuit's decision in *Fundicao Tupy* has no precedential value in this case because it speaks in generalities about preliminary injunctions and does not specifically address the statutory language of § 1516a(e). Regardless of the quoted "Hornbook" language involving the purpose and effect of preliminary injunctions in *Fundicao Tupy*, the appellate court held that it lacked jurisdiction because the controversy had been rendered moot by the trial court's decision on the merits. *Fundicao Tupy*, 841 F.2d at 1103-1104. The Federal Circuit specifically held that the remedy plaintiff sought, an order forcing the trial court to enter a preliminary injunction suspending liquidation, could not be granted. *Id.* In other words, the CIT may not issue a preliminary injunction after it has entered a judgment on the merits. *See id.* That holding has no bearing on the question now before the Court in applying § 1516a(e). In this case, an injunction pursuant to § 1516a(c)(2) was properly issued by the Court on August 2, 2001. The question before the Court now is whether or not that injunction continues to suspend liquidation throughout the appeals process.

If the Court were to hold that the preliminary injunction dissolved when the CIT issued a

decision "in harmony" with the original agency determination, this would place an unnecessary burden on the courts and on the parties.  First, a new framework would need to be developed for determining if a CIT decision was "in harmony" or "not in harmony" with the agency determination.  For instance, in *Fujitsu*, Commerce had requested a voluntary remand for recalculation of the dumping margin before the Court had considered the merits.  *Fujitsu*, 110 F. Supp. 2d at 1065.  The Government categorizes the CIT's affirmance of Commerce's recalculation after the voluntary remand as "not in harmony" with the agency's determination (Def.'s Br. at 15), yet the argument could be made that such a decision is in fact "in harmony" because the CIT merely affirmed the agency's voluntary redetermination.  Further, there is no clear indication what categorization would be given to a CIT decision that affirmed in part and remanded in part an agency determination.  An appeal of the affirmed aspect of the determination could be considered "in harmony," but an appeal of the redetermination on remand could be considered "not in harmony."  Forcing the Court and the parties to make such distinctions would be burdensome and unnecessary.

As Plaintiff notes, if the Court were to adopt Defendant's position, the parties would be forced to seek the consent of the opposing party, come before the Court, and prove the same four factors that had already been analyzed and decided by the Court before issuing the initial preliminary injunction.  (*See* Pl.'s Rebuttal at 6.)  Adopting Defendant's position would weaken the Court's ability to order remand and would effectively punish the plaintiff if the Court were to order a remand.  If a redetermination were to be upheld by the Court, the plaintiff would have to bear the costs of reentering the Court to seek an injunction pending appeal to preserve its statutory right to appellate review.  If the opposing party, or an intervening party as in this case,

were to withhold consent, then the Court would presumably need to weigh the necessary factors before deciding to issue a new injunction. If the Court were to assume this "harmony/not in harmony" distinction, the Government would be given an advantage in the litigation wherein withholding consent for a new injunction could result in the liquidation of the subject entries and deprive the plaintiff of a meaningful appeal. In other words, the Federal Circuit would be deprived of jurisdiction because no justiciable issue would remain for the court to decide. That is exactly what would have happened in this case if the three entries at the Port of Norfolk had been liquidated.

Although not fully articulated until this action, it appears that the Government has previously taken the position that preliminary injunctions dissolve when the CIT issues an "in harmony" decision. (*See* Def.'s Resp. Br. at 2-3.) As mentioned in Defendant's contentions, the Government cites sixteen instances in which the Court issued injunctions under similar circumstances. (*Id.*)[8]

_____

[8] The Defendant cites the following cases in its submission to the Court. Although Defendant attached copies of the orders, the Defendant did not attach copies of the underlying motions which were more revealing of the intent of the parties. Relevant portions have been excerpted from the motions.

1. *Timken Co. v. United States*, Consol. Ct. No. 01-00127. Order granting consent application for an injunction pending appeal signed on March 11, 2003.

2. *Acciai Speciali Terni S.p.A. v. United States*, Ct. No. 01-00051. Order granting consent application for an Injunction Pending Appeal "to the extent that the preliminary injunction issued by this Court on April 18, 2002 is no longer in effect" signed on March 6, 2003.

3. *RHP Bearings Ltd. v. United States*, Ct. No. 98-07-02526. "[I]t is NSK-RHP's position that the Court has not made a final decision in this case. [citing *Fujitsu*]. Counsel for the United States disagrees: It is the United States' position that the preliminary injunction previously entered by the Court was dissolved when the Court entered final judgment. [citing *Fundicao Tupy*]." (Consent Motion for Entry of Injunction Pending Appeal at 2.) Order signed on February 20, 2003.

4.  *Ausimont S.p.A. v. United States*, Ct. No. 98-10-03063.  Order granting consent application for an injunction pending appeal signed on February 6, 2003.

5.  *Allegheny Ludlum Corp. v. United States*, Ct. No. 99-06-00369.  Order granting consent application for an injunction pending appeal signed on January 6, 2003.

6.  *Allegheny Ludlum Corp. v. United States*, Ct. No. 01-00236.  Order granting consent application for an injunction pending appeal signed on January 6, 2003.

7.  *NTN Bearing Corp. of Am. v. United States*, Consol. Ct. No. 98-01-00146.  "In all other litigations before this Court and the Federal Circuit, NSK has never had to renew, continue or obtain a new preliminary injunction when the decision of this Court has been appealed to the Federal Circuit or when the Federal Circuit has remanded a proceeding to this Court after appeal." (Motion to Affirm the Validity of Preliminary Injunction Already Entered in Litigation, or, In the Alternative, Motion for Entry of Injunction Pending Appeal at 2.)  Order signed on November 21, 2002.

8.  *Koyo Seiko Co., Ltd. v. United States*, Consol. Ct. No. 98-06-02274.  Order granting consent application for an injunction pending appeal signed on November 21, 2002.

9.  *Torrington Co. v. United States*, Consol. Ct. No. 99-08-00462.  Order granting consent application for an injunction pending appeal signed on November 21, 2002.

10.  *Alloy Piping, Prods. Inc. v. United States*, Consol. Ct. No. 01-00099.  "On August 2, 2002 [plaintiff's counsel] was notified by [defendant's counsel] that in the Department of Justice's view, the original preliminary injunction, entered . . . on May 4, 2001, must be amended to remain operative during the pendency of the appeal. . . . While [plaintiff] believes that the original preliminary injunction . . . remains in effect until appellate process is exhausted (*i.e.*, once judgment becomes final pursuant to [*Hosiden*]), the Government takes the position that an amended preliminary injunction must be entered.  Unless enjoined by an amended order of this Court, Defendant, United States, asserts that it would be able to issue instructions to liquidate, and proceed with liquidation . . . ." (Consent Motion for Amended Preliminary Injunction at 2.)  Order signed on August 21, 2002.

11.  *Koyo Seiko Co., Ltd. v. United States*, Ct. No. 99-01-00001.  Order granting consent application for an injunction pending appeal signed on August 7, 2000.

12.  *Hoogovens Staal BV v. United States*, Consol. Ct. No. 96-10-02394.  Order granting consent application for an injunction pending appeal signed on June 20, 2000.

13.  *Micron Tech., Inc. v. United States*, Ct. No. 97-02-00205.  "[C]ounsel for Micron was . . . apprised by [Commerce] that under Commerce's reading of the April 21, 1997 preliminary injunction, it is no longer barred from liquidating the entries that were covered by the preliminary injunction . . . .  Micron believes that this Court's injunction of April 21, 1997, enjoining liquidation 'during the pendency of this litigation,' continues to bar the liquidation of the subject entries until the final court decision is rendered in this case.

(*Id*.)  However, the Court is not swayed by these prior issuances of injunctions pending appeal.  It would appear that all of the motions came before the Court on consent or were unopposed.[9]  The Court acted to the benefit of the parties to expedite the litigation by granting the motions.  Citing such orders after Defendant has violated the Court's August 2001 Preliminary Injunction hints at "experimentation with disobedience of the law" in order to effect change within the law, something that courts do not look upon favorably.  *See McComb*, 336 U.S. at 192.

The Court holds that the August 2001 Preliminary Injunction did not dissolve when the Court issued a decision on the merits in August 2002; therefore, a valid court order was in existence at the time that Defendant issued instructions to liquidate in November 2002 and liquidated the subject entries in January 2003.

**2.  The Court finds that Defendant had knowledge of the order.**

The August 2001 Preliminary Injunction was submitted on a consent motion.  (Mot. for

---

[citing *Hosiden*]." (Pl.'s Motion to Continue, Pending Appeal, the Preliminary Injunction at 3.)  Order signed on May 24, 2000.

14.  *E.I. DuPont de Nemours v. United States*, Ct. No. 97-08-01335.  Order granting plaintiff's motion to grant and restore the court's preliminary injunction pending appeal signed on November 23, 1999.

15.  *Böhler-Uddeholm Corp. v. United States*, Ct. No. 95-08-01024.  Order granting plaintiff's motion for an injunction pending appeal signed on October 21, 1999.

16.  *FMC Corp. v. United States*, Ct. No. 01-00807, C.A.F.C. No. 03-1323.  Order granting consent application for an injunction pending appeal signed by Judge Bryson of the U.S. Court of Appeals for the Federal Circuit on April 29, 2003.

[9] The Court is unable to determine the parties' positions regarding the motions in *E.I. DuPont de Nemours v. United States*, Ct. No. 97-08-01335, and *Böhler-Uddeholm Corp. v. United States*, Ct. No. 95-08-01024, because the orders do not indicate consent and the original motions cannot be readily accessed by the Court.

Prelim. Inj. at 3.)  The Government was served with the preliminary injunction in August 2001.

Defendant does not contest the fact that Defendant had knowledge of the injunction and the

Government's witness, Ms. Tillman, testified that she had actual knowledge of the injunction.

(Hr'g Tr. at 13-14.)  Therefore, the Court finds that Defendant had knowledge of the Court's

August 2002 Preliminary Injunction when it issued liquidation instructions in November 2002

and liquidated the subject entries in January 2003.

**3.  The Court finds that Defendant disobeyed the order.**

As set forth in the background above, at the Show Cause Hearing, the parties stipulated to

the statement of facts.  On November 1, 2002, Commerce issued instructions to Customs to

liquidate the entries covered by the August 2001 Preliminary Injunction.  (Hr'g Tr. at 19.)  Such

liquidation took place on January 3, 2003; January 10, 2003; and January 17, 2003.  (Agreed

Statement of Facts at ¶¶ 7, 8, 10.)

Defendant contends that the Government cannot be held in contempt if there is "doubt as

to the wrongfulness" of it actions.  (Def.'s Br. at 7.)  As analyzed above, the wrongfulness of

liquidating entries covered by a valid injunction is not in doubt.  The purpose of civil contempt is

remedial; therefore, it does not matter with what intent the defendant did the prohibited act.  *See*

*McComb*, 336 U.S. at 191.  Defendant also contends that it should not be held in contempt of this

Court's August 2001 Preliminary Injunction because Plaintiff has an alternative remedy at law: a

protest under 19 U.S.C. § 1514.  (Def.'s Br. at 18-19.)  The Court rejects the Government's

contention that a protest under § 1514 is the appropriate remedy for this matter.  As Plaintiff

contends, a protest would be futile because Customs was merely following the instructions of

Commerce when it liquidated the subject entries in January 2003.  *See, e.g., Springfield Indus. v.*

*United States*, 655 F. Supp. 506, 507 (Ct. Int'l Trade 1987) ("The specific conduct of [Customs] . . . will be ministerial only . . . a protest against [Customs' conduct] is hopeless and the exhaustion of administrative remedies would be futile.").  The proper means to enforce an order of this Court against the Government is to seek relief in this Court; it is not to file a protest with Customs.

The three elements for civil contempt as articulated by this Court in *Ammex, Inc. v. United States* have been fully satisfied.  Therefore, the Court holds that Defendant was in contempt of the August 2001 Preliminary Injunction when Commerce issued instructions to liquidate the subject entries in November 2002 and when Customs liquidated certain entries in January 2003.

**4.  The Court reserves decision regarding damages.**

Plaintiff asks this Court to award costs and attorney's fees under CIT Rule 63.  (Pl.'s Mem. on Damages at 2.)  Civil contempt may be punished by a remedial fine, which compensates the party protected by the injunction for the effects of the other party's noncompliance.  *United Mine Workers*, 330 U.S. at 303-304.  However, the full effect of the Government's noncompliance with the Court's August 2001 Preliminary Injunction will not be known until the Federal Circuit decides the underlying case on appeal and the parties have had an opportunity to petition for a writ of certiorari.   The Court reserves decision on damages until such time.

CONCLUSION

For the reasons set forth above, the Court holds Defendant in contempt of this Court's August 2001 Preliminary Injunction for it actions in November 2002 when Commerce issued

liquidation instructions to Customs and for its actions in January 2003 when Customs liquidated

the subject entries.  As discussed in the analysis, the Court holds that the August 2001

Preliminary Injunction clearly suspended liquidation throughout the appeals process; therefore,

Plaintiff's Motion to Clarify is denied as unnecessary.  The Court reserves decision on the issue

of damages until all appeals of the underlying case have been exhausted.

_____
Gregory W. Carman,
Chief Judge

Dated:  July                 , 2003
          New York, New York