Slip Op. 04-42

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: GREGORY W. CARMAN

YANCHENG BAOLONG
BIOCHEMICAL PRODUCTS
COMPANY, LTD.,

          **Plaintiff,**

    v.

UNITED STATES OF AMERICA,

          **Defendant,**

    **and**

CRAWFISH PROCESSORS ALLIANCE,
<u>et al.,</u>

          **Defendant-
Intervenors.**

**Court No. 01-00338**

[Defendant's Motion to Vacate the Court's Judgment Entered on July 16, 2003, is denied. This Court cannot award Plaintiff damages in the form of attorney fees associated with the contempt proceedings because the United States has not waived its sovereign immunity for such an award; Plaintiff's request for attorney fees is denied.]

*deKieffer & Horgan* (*J. Kevin Horgan*), Washington, D.C., for Plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Jeanne E. Davidson*, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Paul D. Kovac*, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Stephen C. Tosini*, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Marisa Goldstein*, Attorney, Office of Chief Counsel for Import Administration, United States Department of Commerce, of Counsel, for Defendant.

*Adduci, Mastriani & Schaumberg, L.L.P.* (*Will E. Leonard*, *Mark R. Leventhal*, *John C. Steinberger*), Washington, D.C., for Defendant-Intervenors.

Dated: April 28, 2004

**OPINION**

**CARMAN, Judge:** There are two matters presently before this Court: 1) Defendant's Motion to Vacate the Court's Judgment Entered on July 16, 2003; and 2) Plaintiff's Memorandum on Damages to be Awarded Based on a Finding of Contempt for Violation of the Injunction Against Liquidation of Subject Entries. For the reasons set forth below, this Court denies Defendant's Motion to Vacate and does not award Plaintiff attorney fees as damages for Defendant's contempt.

**BACKGROUND**

Familiarity with this Court's opinion issued on July 16, 2003, is presumed. *See Yancheng Baolong Biochemical Products Company, Ltd. v. United States*, 277 F. Supp. 2d 1349 (Ct. Int'l Trade 2003) ("*Yancheng Contempt Decision*"). This Court incorporates the detailed recitation of the facts as agreed to by the parties at the show cause hearing on June 4, 2003, and as found by this Court in the *Yancheng Contempt Decision*. *See id.* at 1350-52. The facts leading up to the present matters are provided briefly below.

In June 2001, Plaintiff sought judicial review of the United States Department of Commerce's ("Commerce") rescission of the administrative review of an antidumping duty order as to Plaintiff. *See Freshwater Crawfish Tail Meat from the People's Republic of China; Notice of Final Results of Antidumping Duty Administrative Review and New Shipper Reviews, and Final Partial Rescission of Antidumping Administrative Review*, 66 Fed. Reg. 20,634 (Apr. 24, 2001), *amended by* 66 Fed. Reg. 30,409 (June 6, 2001) ("*Final Results*"). In August 2001, on

consent of the parties and pursuant to 19 U.S.C. § 1516a(c)(2) (2000), this Court issued a preliminary injunction ("August 2001 Preliminary Injunction") which enjoined the liquidation of any and all unliquidated entries of crawfish tail meat from the People's Republic of China exported by Plaintiff that were covered by the *Final Results*. *Yancheng Baolong Biochemical Prods. Co., Ltd. v. United States*, No. 01-00338 (Ct. Int'l Trade Aug. 2, 2001) (order granting preliminary injunction). The August 2001 Preliminary Injunction specifically stated that Defendant shall be enjoined from liquidating the subject entries "during the pendency of this action," and "that the entries subject to this injunction shall be liquidated in accordance with the final court decision as provided in 19 U.S.C. § 1516a(e).[1]" (*Id*. at 1-2.) The August 2001 Preliminary Injunction covered thirty-one entries: twenty-eight at the Port of Los Angeles, California; and three at the Port of Norfolk, Virginia. (Def.'s Conf. Submission of 04/09/03.)

In August 2002, this Court denied Plaintiff's Motion for Judgment on the Agency Record and sustained Commerce's rescission of the administrative review of the antidumping duty order

---

[1] The full text of 19 U.S.C. § 1516a(e) is as follows:
(e) Liquidation in accordance with final decision
If the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit --
> (1) entries of merchandise of the character covered by the published determination of the Secretary, the administering authority, or the Commission, which is entered, or withdrawn from warehouse, for consumption after the date of publication in the Federal Register by the Secretary or the administering authority of a notice of the court decision, and
> (2) entries, the liquidation of which was enjoined under subsection (c)(2) of this section,
shall be liquidated in accordance with the final court decision in the action. Such notice of the court decision shall be published within ten days from the date of the issuance of the court decision.

as to Plaintiff.  *Yancheng Baolong Biochemical Prods. Co., Ltd. v. United States*, 219 F. Supp. 2d 1317 (Ct. Int'l Trade 2002).  Plaintiff filed a Notice of Appeal to the United States Court of Appeals for the Federal Circuit ("Court of Appeals") on October 4, 2002.  *See id.*, *appeal docketed*, No. 03-1059 (Fed. Cir. Nov. 5, 2002).

While the appeal was pending, Plaintiff filed a request in this Court to clarify or amend the Court's August 2001 Preliminary Injunction.  (*See* Pl.'s Mot. to Clarify Or, Alternatively, Extend Inj. Against Liquidation of Entries ("Pl.'s Mot. to Clarify") at 1.)  In that motion, Plaintiff asserted that Plaintiff's counsel had been informed by Defendant's counsel that unless Plaintiff obtained an injunction pending appeal, the subject entries would be liquidated.  (*Id.* at 3.)

Two days after Plaintiff filed its Motion to Clarify in this Court, Commerce sent instructions to the United States Customs Service, now organized as the Bureau of Customs and Border Protection ("Customs"), directing Customs to liquidate the subject entries at an antidumping duty rate of 201.63% of the entered value, the rate that was determined by Commerce in the *Final Results* and that was sustained by this Court in its August 2002 opinion. *See Yancheng Contempt Decision*, 277 F. Supp. 2d at 1352 (citing Agreed Statement of Facts ¶ 5).

Defendant and Defendant-Intervenors did not file a response to Plaintiff's Motion to Clarify.  *Id.* at 1351-52.  The time to respond to Plaintiff's Motion to Clarify expired on December 15, 2002.  *Id.*  This Court scheduled a telephone conference on January 15, 2003, to discuss the pending motion.  *Id.* (citing Agreed Statement of Facts ¶ 9).  After the telephone conference with this Court, Customs issued new instructions to its field offices to stop liquidation of the subject entries.  *Id.* (citing Agreed Statement of Facts ¶ 11).  By that time,

however, the twenty-eight entries at the Port of Los Angeles had been liquidated; only the three

entries at Norfolk, Virginia, remained.  *Id.* (citing Agreed Statement of Facts ¶¶ 7, 8, & 10; Hr'g

Tr. At 32, 67).  Over the next several months, the parties continued to work together and

submitted status reports to the Court regarding the parties' efforts to discover the relevant facts

and to reach a settlement resolving this matter.  *Id.* (citing Agreed Statement of Facts ¶ 12-19).

After repeated efforts to settle this matter between the parties failed, and the facts

surrounding the liquidations were revealed to the Court, this Court issued an Order to Show

Cause providing Defendant with an opportunity to present evidence why it should not be held in

contempt of this Court's August 2001 Preliminary Injunction for issuing instruction to liquidate

in November 2002 and for liquidating the subject entries in January 2003.  *Id.*; *see also Yancheng*

*Baolong Biochemical Prods. Co., Ltd. v. United States*, No. 01-00338 (Ct. Int'l Trade May 21,

2003) (order to show cause).  Pursuant to Rule 86.2 of the Rules of the United States Court of

International Trade, a show cause hearing was held on June 4, 2003.  *See* USCIT R. 86.2 (1995)

(renumbered Jan. 1, 2004)[2].

At the show cause hearing, Defendant argued that "the August 2001 Preliminary

Injunction dissolved when this Court entered judgment in favor of Defendant on August 15,

2002."  *Yancheng Contempt Decision*, 277 F. Supp. 2d at 1353 (citing Def.'s Resp. to the Ct.'s

Order to Show Cause of May 21, 2003 ("Def.'s Show Cause Br.") at 2, 5).  Defendant argued

that under the Court of Appeals' precedent, any preliminary injunction issued by this Court

dissolved when this Court enters judgment on the merits and liquidation is not suspended during

---

[2] Pursuant to the renumbering of the USCIT Rules, former Rule 63 is now identified as Rule 86.2.

the appeal process absent a new injunction pending appeal.  *Id*. at 1354 (citing Def.'s Show

Cause Br. at 9-11 (in turn citing *Fundaicao Tupy S.A. v. United States*, 841 F.2d 1101)).

This Court rejected Defendant's arguments and issued an opinion on July 16, 2003,

holding the Government in contempt of this Court's August 2001 Preliminary Injunction for

issuing liquidation instructions and liquidating the subject entries.  *Yancheng Contempt Decision*,

277 F. Supp. 2d at 1364.  In holding the Government in contempt, this Court stated that

preliminary injunctions issued by the Court of International Trade are essential in preserving a

plaintiff's right to judicial review.  *Id*. at 1359-60.  As developed in this Court's earlier contempt

decision, Congress specifically granted the authority to this Court to grant injunctions that

suspend liquidation until there has been a "final court decision in the action."  *See id.* at 1358-59;

*see also* 19 U.S.C. § 1516a(c)(2) ("the United States Court of International Trade may enjoin the

liquidation of some or all entries of merchandise covered by a determination").  The purpose of

this Court's preliminary injunction is to preserve this Court's jurisdiction and to preserve the

jurisdiction of the appellate courts.  *See Yancheng Contempt Decision*, 277 F. Supp. 2d at 1358.

This Court issues preliminary injunctions pursuant to 19 U.S.C. § 1516a(e) requiring the

suspension of covered entries through the pendency of the action until all appeals have been

exhausted.  If such suspension of liquidation did not take place, importers would suffer

irreparable harm because the Court of Appeals, having no justiciable conflict to resolve, would

be constitutionally powerless to remedy any improvident determinations by the trial court.  *See*

*Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983).  The Court of Appeals

is without jurisdiction to hear a case if the subject entries have been liquidated prior to appeal.

*Id.*  Section 1516a(e)(2) specifically states that "[i]f the cause of action is sustained in whole or in

part by a decision of the United States Court of International Trade <u>or</u> the United States Court of Appeal for the Federal Circuit . . . entries the liquidation of which was enjoined under subsection (c)(2) of this section, shall be liquidated in accordance with the final court decision in the action."  19 U.S.C. § 1516a(e)(2) (emphasis added).  It is clear from the statutory scheme of § 1516a that Congress did not intend for the Court of Appeals to be disenfranchised.  Based upon the facts that were presented to the Court during the Show Cause hearing, it was evident that if this Court had not intervened at Plaintiff's request, the remaining three entries, upon which the Court of Appeals rested its jurisdiction, would have been liquidated.  *See Yancheng Contempt Decision*, 277 F. Supp. 2d at 1352.

The Court of Appeals affirmed this Court's decision in the underlying case on August 4, 2003.  *Yancheng Baolong Biochemical Prods. Co., Ltd. v. United States*, 337 F.3d 1332, 1333-34 (Fed. Cir. 2003).  Specifically, the Court of Appeals affirmed this Court's holding that Commerce reasonably rescinded the administrative review as to Plaintiff.  *Id*.  Thus, Plaintiff's entries were held to be subject to the 201.63% antidumping duty rate.  The Court of Appeals' mandate issued on September 25, 2003.  Before this Court issued a decision regarding damages, Defendant filed its Motion to Vacate the Court's Judgment Entered on July 16, 2003 ("Def.'s Mot. to Vacate").

While the issue of damages and Defendant's Motion to Vacate were under consideration, this Court sent a letter to counsel raising the issue sovereign immunity in the context of this Court awarding attorney fees as damages for contempt pursuant to this Court's Rule 86.2.  (*See* Letter from chambers of J. Carman to Counsel of 03/03/04.)  The Court specifically brought the Court of Appeals' decision in *M.A. Mortenson Company v. United States*, 996 F.2d 1177 (Fed.

Cir. 1993), to the attention of the parties.  (*Id*.)  The Court provided the parties two-weeks to submit further briefing on this issue.  (*Id*.)  After this Court granted Defendant's request for an extension of time to file its supplemental brief, both Defendant and Plaintiff submitted additional briefs on the issue of sovereign immunity.

Because the Court of Appeal's decision in *Mortenson* is central to this Court's decision on the issue of sovereign immunity, a brief summary of *Mortenson* follows.  In *Mortenson*, the Court of Appeals held that the United States Claims Court[3] could award attorney fees against the Government for violation of its court rules which authorized attorney fees as sanctions for abuses of discovery.  *Mortenson*, 996 F.2d at 1178.  The Claims Court procedural rule under examination mirrored the Federal Rules of Civil Procedure ("FRCP") Rule 37, "Failure to Make Disclosure or Cooperate in Discovery; Sanctions."  *See id.* at 1183; *see also* FED. R. CIV. P. 37. The Court of Appeals determined that the Equal Access to Justice Act ("EAJA"), Pub. L. No. 96-481, Title II, 1980 U.S.C.C.A.N. 2325 (1980) (codified as amended at various sections of Title 5 and 28 U.S.C.), waived the United States' sovereign immunity for awards of attorney fees under the court's procedural rules.  *Id*. at 1180-82.  Specifically, the Court of Appeals examined 28 U.S.C. § 2412(b) which states that "[t]he United States shall be liable for such [attorney] fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412.  The Court of Appeals reasoned that, based on the legislative history of the EAJA which specifically contemplated awards of attorney's fees for violations of the FRCP, § 2412(b)'s phrase "terms of

---

[3] At the time of the *Mortenson* opinion, the court was known as the United States Claims Court.  Its name was changed to the United States Court of Federal Claims as part of the Federal Court Administration Act of 1992, Pub. L. No. 102-572, 106 Stat. 4506 (1992).

any statute" should not be narrowly construed. *Id.* at 1181 ("Thus, it is consistent with Congress'

intent and the legislative history to interpret 'statute' as including the FRCP."). The Court of

Appeals reasoned that because the Claims Court's rule was identical to the FRCP rule, and the

Claims Court had been authorized by Congress "to adopt its own rules without the need for

supervisory or statutory oversight," the rules of the Claims Court should also be included within

the EAJA's "terms of any statute" requirement. *Id.* at 1183. The Court of Appeals asserted that

"[i]t is well established that a court's procedural rules promulgated pursuant to statutory

authorization are deemed to have the force and effect of law." *Id.* (citing *Weil v. Neary*, 278 U.S.

160, 169 (1929) (additional citations omitted)). Thus, the Court of Appeals held that § 2412(b)

of the EAJA waived the Untied States' sovereign immunity for an award of attorney fees under

the Claims Court's Rule for violation of discovery orders. *Id*. at 1184.

**PARTIES' CONTENTIONS**

*I. Defendant's Contentions.*

**A. Motion to Vacate.**

First, Defendant seeks relief from this Court's decision of July 16, 2003, wherein this

Court held Defendant in contempt of this Court's August 2001 Preliminary Injunction. (Def.'s

Mot. to Vacate at 1.) Defendant seeks relief under USCIT Rule 60(b)(1) which states that "the

court may relieve a party . . . from a final judgment, order, or proceeding for . . . mistake,

inadvertence, surprise, or excusable neglect." USCIT R. 60(b)(1). Alternatively, Defendant

seeks relief under USCIT Rule 60(b)(6) which allows the Court to grant relief "from a final

judgment, order, or proceeding for . . . any other reason justifying relief from the operation of the

judgment." USCIT R. 60(b)(6).

At the outset, Defendant notes that "[a]lthough Commerce maintains that its interpretation of the preliminary injunction was reasonable, it did not appeal this issue to the Federal Circuit[] because contempt citations cannot be appealed until the order is final and damages are assessed." (Def.'s Mot. to Vacate at 6 (citations omitted).)

Defendant claims that this Court's contempt decision "does not satisfy the required elements for civil contempt" because Plaintiff has not suffered any harm as a result of Defendant's contemptuous liquidations. (*Id*. at 8-9.) Defendant contends that Plaintiff has not been harmed because the duty rate assessed on its entries in violation of this Court's August 2001 Preliminary Injunction was affirmed by the Court of Appeals as the correct rate of duty. (*Id*. at 9.) Defendant stresses that the 28 entries liquidated in violation of this Court's August 2001 Preliminary Injunction were done so "at the same PRC-wide duty rate of 201.63[%] that was affirmed by this Court and the appellate court." (*Id*.) Thus, Defendant contends that this Court's contempt decision is mistaken because damages, a necessary element of contempt, has not been established. (*Id*.) Defendant claims that "permitting [the *Yancheng Contempt Decision*] to stand would constitute a mistake and grounds for vacatur pursuant to Rule 60(b)(1)." (*Id*.) Defendant asserts that there is no remedial purpose to be served by this Court's civil contempt decision. (*Id*.) Defendant contends that Plaintiff "has not suffered any actual losses which require compensation." (*Id*. at 10.) Lastly, Defendant states that if this Court declines to vacate its order under Rule 60(b)(1), Defendant "propos[es], as an alternative, that the extraordinary circumstances (as presented in [its] primary argument) warrant vacatur pursuant to the 'catch-all' provision of Rule 60(b)(6)." (*Id*. at 12.)

**B. Sovereign Immunity.**

Defendant contends that this Court "does not possess jurisdiction to entertain claims seeking the award of attorney fees against the United States pursuant to [USCIT Rule] 86.2." (Def.'s Supp. Br. Concerning the Court's Jurisdiction to Assess Money Damages Against the United States Pursuant to the Court's Contempt Rule ("Def.'s Supp. Br.") at 4.)  Defendant contends that this Court cannot "invalidate the sovereign immunity of the United States by issuing a local rule that allows the assessment of attorney fees against the United States." (*Id*. at 2, 6-7.)  Defendant contends that there is not an express waiver of sovereign immunity present in this case as required by Supreme Court precedents.  (*Id*. at 4.)  Defendant contends that "[e]ven if there has been some wavier of immunity, the Government is not subject to monetary liability unless the waiver unequivocally expresses consent to such claims."  (*Id*. at 5 (citations omitted).)  Defendant contends that "[n]o statute waives sovereign immunity by authorizing funds for the payment of attorney fees pursuant to the circumstances presented in this case."  (*Id*. at 6.)  Defendant asserts that the "sole support proffered" for waiver of sovereign immunity is "local rule" 86.2.  (*Id*.)  Defendant contends that "this local rule – in addition to lacking an express waiver – is not an act of Congress."  (*Id*.)

Defendant contends that this Court should not follow the Court of Appeals' holding in *Mortenson* "because: (1) that case's holding has been invalidated by subsequent Supreme Court precedent; and (2) the facts of this case are inapposite."  (*Id*. at 9.)  First, Defendant claims that the Court of Appeals relied on the legislative history of the EAJA to hold that "FRCP 37, in conjunction with 28 U.S.C. § 2412(b) operated as a waiver of sovereign immunity."  (*Id*. (citing *Mortenson*, at 1181-82).)  Defendant contends that the Supreme Court's decision in *Lane v. Pena*, 518 U.S. 187 (1996),  "expressly invalidated" the Court of Appeals' reasoning in

*Mortenson*. (*Id*. at 10.) Quoting *Lane v. Pena*, Defendant contends that "[a] statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text." (*Id*. at 10 (quoting *Lane v. Pena*, 518 U.S. at 192).) Thus, Defendant asserts that the Court of Appeals' "sole basis for . . . finding [] a waiver of sovereign immunity" has been invalidated by the Supreme Court. (*Id*.)

Second, Defendant contends that, even if *Mortenson* "retained any legal force," the reasoning in *Mortenson* is not applicable to this case because "there is no corresponding language in the EAJA's legislative history concerning contempt proceedings." (*Id*.) Further, Defendant contends that unlike the FRCP, this Court's Rule 86.2 does not carry "the force of statutes" because the Court of Appeals has explicitly held that this Court's rules are "'not statutory' even in the presence of an analogous Federal Rule of Civil Procedure." (*Id*. at 11 (citing *Stone Container Corp. v. United States*, 229 F.3d 1345, 1355 (Fed. Cir. 2000)).) Defendant asserts that there is not an analogous rule to this Court's Rule 86.2 in the Federal Rule of Civil Procedure, as there was for the rule considered in *Mortenson*. (*Id*. at 7.)

Defendant concludes that "a court's local rules cannot invalidate the sovereign immunity of the United States. . . . Accordingly, the Court does not possess jurisdiction to entertain claims seeking attorney fees against the United States pursuant to [USCIT Rule] 86.2." (*Id*. at 11-12.)

**C. Damages.**

Should the Court find a waiver of sovereign immunity, Defendant asserts that Plaintiff is not entitled to attorney fees as damages because "Rule [86.2] does not contemplate or authorize an award of attorney fees in the absence of any other damages." (Def.'s Reply at 3.) Defendant contends that Rule 86.2 allows this Court to "include" attorney fees when awarding damages, but

does not permit an award of fees without an award of other damages. (*Id*.) Even if fees were allowed under Rule 86.2, Defendant contends that Plaintiff was not required to initiate these proceedings to preserve its right to judicial review. (*Id*. at 3-4.) Rather, Defendant contends that Plaintiff "could have taken the advice of the Government and requested an extension of the injunction or a stay pending appeal, to which the Government was willing to consent." (*Id*. at 4.) Defendant also argues, as it did in the earlier contempt proceedings, that the proceedings were not necessary because Plaintiff's importer filed protests of the liquidations of some of the subject entries with Customs. (*Id*.) Therefore, Defendant contends that the status quo was preserved because Customs "generally refrains from addressing the [protested] issue until the underlying litigation is resolved." (*Id*.) Defendant asserts that the contempt proceedings, "while instructive to resolve a genuine issue of legal disagreement, were not necessary to preserve any rights to meaningful judicial review of Commerce's determination." (*Id*. at 5.)

Defendant also claims that attorney fees should not be awarded because the Government's position, as detailed in its Response to the Court's Order to Show Cause, for liquidating the subject entries in violation of this Court's August 2001 Preliminary Injunction was "substantially justified." (*Id*. at 5-6.) Finally, Defendant claims that "the amounts claimed by plaintiff are questionable and excessive." (*Id*. at 6.)

*II. Plaintiff's Contentions.*

**A. Motion to Vacate.**

Plaintiff takes the position that this Court's contempt decision should stand and the Court should award damages to Plaintiff as requested in Plaintiff's Memorandum on Damages to be Awarded Based on a Finding of Contempt for Violation of the Injunction Against Liquidation of

Subject Entries ("Pl.'s Mem. on Damages").  (Pl.'s Opp'n to Def.'s Mot. To Vacate Finding of Contempt ("Pl.'s Opp'n") at 3, 5.)  First, Plaintiff contends that in its contempt decision, this Court "essentially found that damages in the form of fees and costs had been incurred as a result of defendant's contumacious conduct."  (*Id*. at 4.)  Plaintiff asserts that this Court "merely postponed its calculation of damages until it could measure the 'full effect of the Government's noncompliance.'"  (*Id*. (quoting *Yancheng Contempt Decision*, 277 F. Supp. 2d at 1364).)  Plaintiff contends that this Court was not mistaken in holding Defendant in contempt; thus, Defendant's Motion to Vacate under Rule 60(b)(1) should be denied.  (*Id*.)  Further, Plaintiff asserts that Defendant "has also failed to articulate any extraordinary circumstances that would support vacatur under Rule 60(b)(6)."  (*Id*. at 5.)

## B. Sovereign Immunity.

Plaintiff contends that the doctrine of sovereign immunity does not bar this Court from awarding attorney fees as damages for contempt.  (Pl.'s Further Briefing on Att'y Fees under Rules 86.2 and Sovereign Immunity as Discussed in *M.A. Mortenson Co. v. United States* ("Pl's Supp. Br.") at 3.)  Plaintiff contends that, in considering the issue of sovereign immunity, the questions before this Court are "whether the holding of the Court of Appeals in *Mortenson* should be narrowly construed 1) to apply only to sanctions imposed under the Rules of the Claims Court, as opposed to the Rules of the Untied States Court of International Trade, or 2) to apply only to attorney fees awarded as sanctions for violations of discovery orders, as opposed to fees awarded as sanctions for violations of other orders issued by the Court."  (*Id*. at 2.)  Plaintiff asserts that the "answer to both questions is no."  (*Id*.)

Plaintiff contends that *Mortenson* ruled that the United States' sovereign immunity for an

award of attorney fees was waived by § 2412(b) of the EAJA.  (*Id*. at 3.)  Plaintiff contends that *Mortenson* held that under § 2412(b), in any action in which jurisdiction properly lies in the court, the United States is liable for an award of attorney fees to the same extent that a private party would be liable.  (*Id*. at 3-4.)  Plaintiff contends that there is no question that this Court has jurisdiction of this action.  (*Id*. at 2-3.)  Therefore, Plaintiff asserts that the United States should be liable for attorney fees to the same extent that a private litigant would be before this Court.  (*Id*. at 3-4.)  Plaintiff contends that the waiver of sovereign immunity in § 2412(b) of the EAJA was "for various abuses of the litigation process."  (*Id*. at 3 (quoting *Mortenson*, 996 F.2d at 1182).)  Plaintiff asserts that in *Mortenson*, the Court of Appeals "repeatedly emphasized [that] the Equal Access to Justice Act was intended to allow federal courts to award attorney fees against the Government to the same extent that fees may be awarded against private litigants."  (*Id*. at 3-4.)  Plaintiff notes that under 28 U.S.C. § 1585, this Court has all the powers in law and equity that the federal district courts have, and this Court also has the statutory authority to grant any form of appropriate relief in a civil action under 28 U.S.C. § 2643(c)(1).  (*Id*. at 3)

Further, Plaintiff contends that *Mortenson* should not be narrowly read to only allow attorney fees in instances of violation of discovery orders.  (*Id*.)  Plaintiff emphasizes that the injunction that the Government was found to violate in this action "was issued to preserve the Court's jurisdiction," and that this action would have been rendered moot if Plaintiff had not brought the Government's violation of the injunction to the Court's attention.  (*Id*. at 4.)  Plaintiff urges this Court to "reject the notion that the government can frustrate and undermine the proceedings of this tribunal and leave the Court of International Trade helpless to preclude such conduct on the government's part."  (*Id*.)

Plaintiff asserts that *Lane v. Pena* "does not require the Court to disarm itself in the face of misconduct by the Government." (*Id*.) Rather, Plaintiff contends that *Lane v. Pena* merely reiterates "the well-established principle that waivers of sovereign immunity must be clear." (*Id*. at 5.) Plaintiff contends that a later decision by the Supreme Court addressing sovereign immunity concluded that "the statutory language, taken together with statutory purposes, history, and the absence of any convincing reason for denying the [administrative agency] the relevant power, produce evidence of a waiver that satisfies the stricter [narrow legislative construction] standard." (*Id*. (quoting *West v. Gibson*, 527 U.S. 212, 222 (1999)).) Plaintiff contends that the Court of Appeals has already considered "the statutory language, purpose and history of the EAJA and concluded that the United States has waived its sovereign immunity with respect to awards of attorney fees pursuant to the rules of a federal court as a sanction for violations of that court's orders." (*Id*.) Plaintiff urges this Court to reach the same conclusion. (*Id*.)

## C. Damages.

Should the Court find a waiver of sovereign immunity, Plaintiff asks this Court to award damages in the form of attorney fees and costs as detailed in Plaintiff's Memorandum of Damages. (*Id*. at 5-6.) In its Memorandum on Damages, Plaintiff cites USCIT Rule 86.2, which provides that if a party is found in contempt of an order of this Court, the Court shall enter an order that "fix[es] the fine, if any, imposed by the court, which fine shall include the damages found, and naming the person to whom such fine shall be payable." (Pl.'s Mem. on Damages at 1 (quoting USCIT R. 86.2).) Plaintiff notes that Rule 86.2 also states that "a reasonable counsel fee, necessitated by the contempt proceeding, may be included as an item of damages." (*Id*. at 2 (quoting USCIT R. 86.2).) Plaintiff requests that this Court order Defendant to pay all attorney

fees and costs incurred in connection with counsel's efforts to enforce the Court's injunction and the costs of participating in the contempt proceedings. (*Id*. at 5-6.) Plaintiff asserts that but for Defendant's unlawful liquidations, it would not have accumulated these fees. (*Id*. at 2, 5-6.)

Plaintiff's counsel submitted a declaration in accordance with 28 U.S.C. § 1746, stating that the "total of the fees and costs related only to the plaintiff's efforts to enforce the injunction entered in this matter is $20,761.25 in fees and $756.15 in costs." (Decl. of J. Kevin Horgan ¶ 3.) Plaintiff's counsel also submitted billing records detailing the fees and costs associated with Plaintiff's efforts to enforce the injunction. (*Id*.)

ANALYSIS

## I. Defendant's Motion to Vacate is Denied.

This Court denies Defendant's Motion to Vacate because this Court's decision of July 16, 2003, was not a final decision as required for relief under USCIT Rule 60. Under USCIT Rule 60(b), a party may seek relief "from a <u>final</u> judgment, order, or proceeding." USCIT Rule 60(b) (emphasis added). "In some circumstances, a court may use the Federal Rules of Civil Procedure as a guide to construe the USCIT Rules." *Gilmore Steel Corp., Or. Steel Mills Div. v. United States*, 652 F. Supp. 1545, 1549 n.5 (Ct. Int'l Trade 1987) (citing *Sumitomo Metal Indus. v. Babcock & Wilcox Co.*, 669 F.2d 703, 705 n.3 (C.C.P.A. 1982) (where language of the USCIT rule and the FRCP rule is identical, the court properly looks to interpretations of the FRCP as an aid to construing the USCIT rule) and USCIT R. 1 ("The court may refer for guidance to the rules of other courts.")). In applying FRCP Rule 60, courts have held that "a 'final' judgment is needed to support a Rule 60(b) motion." 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE – CIVIL § 60.23 (3rd ed. 1999). Here, the language of USCIT Rule 60 and FRCP Rule

60 is nearly identical. *Compare* FED. R. CIV. P. 60(b) *with* USCIT R. 60(b). Thus, this Court reasons that USCIT Rule 60, like its FRCP counterpart, allows for relief only from <u>final</u> judgments, <u>final</u> orders, or <u>final</u> proceedings.

Defendant's Motion to Vacate seems to acknowledge that this Court's order of July 16, 2003, is not final. On page six of its Motion to Vacate, Defendant contends that "it did not appeal [the preliminary injunction] issue to the Federal Circuit, because contempt citations cannot be appealed until the order is <u>final</u> and damages are assessed." (Def.'s Br. at 6 (emphasis added) (citing *Seiko Epson Corp. v. Nu-kote Int'l, Inc.*, 190 F.3d 1360, 1369 (Fed. Cir. 1999).) Yet, Defendant seeks relief under Rule 60 which only allows relief from <u>final</u> judgments.

This Court's contempt decision was not a final judgment or a final order, as required under Rule 60(b), precisely because, as Defendant notes, the Court's decision was interlocutory and could not be appealed until damages were assessed. *See Seiko Epson Corp.*, 190 F.3d at 1369 ("A contempt order is final and appealable when the opportunity to purge the contempt has passed and the position of the parties has been affected by the contempt order.") (citing *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1273 (9th Cir. 1976) (contempt order deemed final and appealable when the that were fines assessed were ordered to be paid)).

However, because the issue of damages is addressed below and in the interest of judicial economy, this Court will treat its decision as final for the purposes of addressing the merits of Defendant's Motion to Vacate. Under Rule 60(b), this Court "may relieve a party . . . from a final judgment . . . for . . . mistake, inadvertence, surprise, or excusable neglect." USCIT R. 60(b)(1). The Court may also grant vacatur "for . . . any other reason justifying relief from the

operation of the judgment." USCIT R. 60(b)(6).  This Court finds that Defendant has failed to present any evidence which would support vacatur under Rule 60(b).  For the reasons set forth in the *Yancheng Contempt Decision* and for the reasons herein, this Court holds that Defendant's characterization of this Court's decision as "mistaken" is without merit.  Further, this Court holds that the other possible grounds for vacatur under Rule 60(b)(1) are not present in this action. Additionally, this Court holds that Defendant has failed to show any extraordinary circumstances required for relief under Rule 60(b)(6).  *See Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993) ("To justify relief under subsection (6), a party must show 'extraordinary circumstances.'" (citations omitted)).

**II. This Court Cannot Award Plaintiff Damages in the Form of Attorney Fees Associated with the Contempt Proceedings for Defendant's Violation of this Court's August 2001 Preliminary Injunction Because the United States Has Not Waived its Sovereign Immunity for Such an Award.**

In this Court's earlier contempt decision, the Court specifically reserved decision regarding damages stating that "the full effect of the Government's noncompliance with the Court's August 2001 Preliminary Injunction will not be known until the Federal Circuit decides the underlying case on appeal and the parties have had an opportunity to petition for a writ of certiorari." *Yancheng Contempt Decision*, 277 F. Supp. 2d at 1364.  Now that the Court of Appeals has issued its decision on the underlying case, *see Yancheng*, 337 F.3d 1332, and the time to petition the Supreme Court for a writ of certiorari has expired, *see* SUP. CT. R. 13, this Court turns to the issue of damages.  This Court finds that, but for Defendant's contumacious actions in issuing the liquidation instructions in November 2002 and in liquidating the entries in January 2003, Plaintiff would not have incurred the attorney fees necessary to enforce this Court's August 2001 Preliminary Injunction.  Contrary to Defendant's contentions in its Motion

to Vacate, this Court finds that Plaintiff suffered damages as a result of Defendant's contemptuous liquidations.  Namely, Plaintiff incurred attorney fees as a result of the Government's violation of this Court's August 2001 Preliminary Injunction.  Although the Court of Appeals upheld the duty rate that was applied by Customs when it liquidated Plaintiff's entries in violation of this Court's order, that fact does not relieve Defendant from responsibility for its contumacious behavior in November 2002 and January 2003.

Civil contempt is intended to "compensate for losses or damages sustained by reason of noncompliance."  *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947); *Penfield Co. of Cal. v. Sec. & Exch. Comm'n*, 330 U.S. 585, 590 (1947); *Maggio v. Zeitz*, 333 U.S. 56, 68 (1948)).  Civil contempt may be punished by a remedial fine, which compensates the party protected by the injunction for the effects of the other party's noncompliance.  *United Mine Workers*, 330 U.S. at 303-04.  In contempt proceedings, under the Rules of this Court, a party may be compensated for reasonable attorney fees "necessitated by the contempt proceeding."  USCIT R. 86.2.  However, because this is an action against the Government, this Court cannot award money damages, even in the form of attorney fees, unless there has been a waiver of sovereign immunity.  *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983) ("Except to the extent it has waived its immunity, the Government is immune from claims for attorney's fees." (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 267-68, & n.42 (1975))); *see also Bohac v. Dep't of Agric.*, 239 F.3d 1334, 1339 (Fed. Cir. 2001) ("we cannot allow recovery unless there has been a waiver of sovereign immunity").

The Supreme Court has ruled that "[a] waiver of the Federal Government's sovereign

immunity must be <u>unequivocally expressed in statutory text and will not be implied</u>."  *Lane v. Pena*, 518 U.S. at 192 (emphasis added) (citations omitted).  "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."  *Id*. (citations omitted); *see also United States v. Nordic Village*, 503 U.S. 30, 34 (1992) ("[T]he Government's consent to be sued must be 'construed strictly in favor of the sovereign,' and not 'enlarged . . . beyond what the language requires.'" (citations omitted)).

Defendant characterizes the issue that is before the Court as "[w]hether the Court may invalidate the sovereign immunity of the United States by issuing a local rule[4] that allows the assessment of attorney fees against the United States."  (Def.'s Supp. Br. at 2.)  Defendant misstates the issue.  This Court's Rule 86.2 does not attempt to "invalidate" the sovereign immunity of the United States.  There is no language in this Court's Rule 86.2 that addresses sovereign immunity or the Court's ability to award fees against the United States.  Rather, Congress has already specifically waived sovereign immunity for an award of attorney fees in certain circumstances under the EAJA.  *See* 28 U.S.C. § 2412(b).  This Court must examine the circumstances of this case to determine if the requirements under § 2412(b) of the EAJA are met.  Thus, the issue before the Court is whether the EAJA waives sovereign immunity for an award of attorney fees as damages for the Government's civil contempt.  After careful examination of the language of the EAJA, the Court of Appeals' decision in *Mortenson*, and the relevant Supreme Court precedents regarding sovereign immunity, this Court holds that it cannot award attorney fees as damages for contempt against the Government because the United States has not waived

---

[4] This Court's rules are procedural rules issued pursuant to 28 U.S.C. § 2633(b); they are <u>not</u> local rules like those issued by district courts.  *See* 28 U.S.C. §§ 2071, 2072, 2633; *see also, Mortenson*, 996 F.2d at 1183 ("the United States district courts . . . lack the power to promulgate their own rules").

its sovereign immunity for such an award.

Section 2412(b) of the EAJA states:

Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States . . . in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b). Adhering to the Supreme Court's strict statutory construction requirements for waiver of sovereign immunity, this Court must reach a different result in applying § 2412(b) than that reached by the Court of Appeals in *Mortenson*.

This Court holds that the circumstances of this case prevent this Court from awarding attorney fees to Plaintiff under § 2412(b) of the EAJA for the following reasons: 1) Plaintiff is not the "prevailing party"; and 2) this Court's Rule 86.2 is not "the terms of any statute." First, § 2412(b) specifically allows the court to award attorney fees against the United States "to the prevailing party in any civil action." 28 U.S.C. § 2412(b). Although Plaintiff prevailed in the contempt proceedings, Plaintiff is not the "prevailing party" in the action as required for application of § 2412(b). *See Former Employees of Motorola Ceramic Prods. v. United States*, 336 F.3d 1360, 1364 (Fed. Cir. 2003) (noting that "[t]he Supreme Court has interpreted the phrase 'prevailing party' consistently in all federal fee-shifting statutes" and that "to be a prevailing party, one must 'receive at least some relief on the merits.'" (quoting *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001))); *see also A. Hirsh, Inc. v. United States*, 948 F.2d 1240, 1245 (Fed. Cir. 1991). The Court of Appeals has stated that "[a]lthough [the court] recognize[s] that a 'prevailing party' is not limited 'to a victor only after entry of a final judgment following a full trial on the merits,' winning on a

particular point or ground, even if it may result in permanent change in government practice or may clarify muddled law, does not necessarily entitle a party to EAJA fees." *A. Hirsh, Inc.*, 948 F. 2d at 1245 (citation omitted).  The Court of Appeals ruled that the court must "look at the claimed 'victory' in the context of the litigation as a whole to discern whether the party has achieved the substantive relief it sought." *Id*.  As detailed in the facts above, Defendant prevailed on the merits of the underlying case.  *Yancheng Baolong*, 337 F.3d at 1333-34.  Thus, Plaintiff is not the "prevailing party" under the EAJA.[5]

Second, even if Plaintiff were the prevailing party, § 2412(b) only waives sovereign immunity for an award attorney fees "to the same extent that any other party would be liable under the common law[6] or <u>under the terms of any statute</u> which specifically provides for such an

---

[5] This Court notes that the Court of Appeals did not address the issue of "prevailing party" in *Mortenson*, although the issue was raised in the lower court.  *See M.A. Mortenson Co. v. United States*, 15 Cl. Ct. 362, 363 n.2 (1988).  In *Mortenson*, attorney fees were awarded at an interlocutory phase of the litigation; it had not yet been determined which side was the "prevailing party" in the action.  *Id*.  Although the Court of Appeals heard the Government's appeal of the award of attorney fees after the parties had settled their claims, the court did not address the issue.  *See Mortenson*, 996 F.2d at 1179.

[6] Recovery under the common law was not raised as an issue in this case.  The parties focused their arguments on the availability of recovery under this Court's Rule 86.2.  Under the common law "American Rule," each party must bear its own attorney fees and costs.  *Alyeska Pipeline Serv. Co.*, 421 U.S. at 247.  In listing the limited common law exceptions to the American Rule, the Supreme Court stated that "a court may assess attorneys' fees for the 'willful disobedience of a court order.'"  *Alyeska*, 421 U.S. at 258 (quoting *Fleischmann Distilling Corp. v. Maier Brewing*, 386 U.S. 714, 718 (1967)).  Although this Court need not address this issue, the Court does note that the circuits are split on whether or not they require a finding of willfulness in order to assess attorney fees for contempt.  *Compare Food Lion v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1017 n.14 (D.C. Cir. 1997) ("[W]e see no reason why a district court should not be authorized to include legal fees specifically associated with the contempt as part of the compensation that may be ordered to make the plaintiff whole, even absent a showing of willful disobedience by the contemnor.  Numerous courts have so held." (citing cases from the 8th, 9th, 11th, and D.C. Circuits) *and John Zink Co. v. Zink*, 241 F.3d 1256, 1261- 62 (10th Cir. 2001) ("We agree with the district court and conclude that a finding of willfulness is not required to award attorney fees in a civil contempt proceeding.") *with Omega*

award." 28 U.S.C. § 2412(b) (emphasis added). This Court cannot award attorney fees to

Plaintiff under USCIT Rule 86.2 because Rule 86.2 is not "the terms of any statute" as required

for a wavier of sovereign immunity for awarding attorney fees under § 2812(b). In *Mortenson*,

the Court of Appeals used the legislative history of the EAJA to infer that "the phrase 'terms of

any statute' should not be read narrowly" and should include the Federal Rules of Civil

Procedure and the Rules of the United States Claims Court. *Mortenson*, 996 F.2d at 1181, 1184

("In light of . . . Congress' intention that a court be allowed 'in its discretion to award fees

against the United States to the same extent it may presently award such fees against other

parties,' we find no basis on which to differentiate between the abilities of the federal district

courts and the Claims Court to award monetary sanctions for abuse of discovery against the

United States pursuant to either the FRCP or the [Rules of the United States Claims Court].")

(quoting H.R. Rep. No. 96-1418, at 6 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984). Several

years after the Court of Appeals' decision in *Mortenson*, the Supreme Court in *Lane v. Pena* held

that "[a] statute's legislative history cannot supply a waiver that does not appear clearly in any

statutory text." *Lane v. Pena*, 518 U.S. at 192. Following the Supreme Court's analysis, this

Court feels constrained to construe § 2812(b)'s phrase "terms of any statute" without looking to

the legislative history of the EAJA.[7]

---

*World Travel, Inc. v. Omega Travel Inc.*, 710 F. Supp. 169, 172-73 (E.D. Va. 1989), *aff'd without opinion*, 905 F.2d 1530 (4th Cir. 1990) (stating that the court had "considered *Alyeska*'s use of the phrase 'willful disobedience' and determined that a contemnor's refusal to comply with a court order must rise at least to the level of obstinance or recalcitrance.").

[7] This Court notes that there is some indication in a later Supreme Court opinion that suggests that "statutory language, taken together with statutory purposes, history, and the absence of any convincing reason for denying the [administrative agency] the relevant power [to award compensatory damages against the United States] produce evidence of a waiver [of sovereign immunity]." *West v. Gibson*, 527 U.S. at 222. Indeed, the Court of Appeals has cited this

Under the Supreme Court's announced standard in *Lane v. Pena*, this Court cannot use the legislative history of the EAJA to imply a waiver of sovereign immunity for an award of attorney fees for contempt under this Court's Rule 86.2.  This Court's rules are not "the terms of any statute."  This Court, like the Claims Court in *Mortenson*, has been authorized by Congress to prescribe its own rules of practice and procedure.  *See* 28 U.S.C. § 2633(b) ("The Court of International Trade shall prescribe rules governing summons, pleadings, and other papers, for their amendment, service, and filing, for consolidations, severances, suspensions of cases, and for other procedural matters.").  Acting pursuant to that authority, this Court promulgated Rule 86.2 which states that this Court may "include[] as an item of damage," "[a] reasonable counsel fee, necessitated by the contempt proceedings."[8]  USCIT R. 86.2.  Despite the fact that this Court's Rules are promulgated pursuant to clear statutory authority and are "deemed to have the force and effect of law," *Mortenson*, 996 F.2d at 1183 (citing *Weil v. Neary*, 278 U.S. at 169), the Rules of this Court are not statutory.  *See Stone Container*, 229 F.3d at 1354.  Thus, this Court's Rules are not "the terms of any statute" as required for waiver of sovereign immunity under § 2412(b) of the EAJA.

---

Supreme Court case for the proposition that "it is possible to find support for a waiver of sovereign immunity not only in statutory language, but also in statutory purpose and history." *Ins. Co. of the West v. United States*, 243 F.3d 1367, 1372 (Fed. Cir. 2001) (citing *West v. Gibson*, 527 U.S. at 222)); *see also Bohac*, 239 F.3d at 1339 ("[T]he Supreme Court recently appears to have allowed greater latitude for interpreting the scope of sovereign immunity waivers in the light of 'statutory purposes, history, and the absence of convincing reason for denying' a wavier." (quoting *West v. Gibson*, 527 U.S. at 222)).  However, this Court cannot ignore the Supreme Court's clear instructions in *Lane v. Pena* that waivers of sovereign immunity cannot be implied through legislative history.

[8] Although Plaintiff requests both attorney fees and costs, the Court will only consider Plaintiff's request for attorney fees because USCIT Rule 86.2 states that "a reasonable counsel <u>fee</u> . . . may be included as an item of damage."  USCIT R. 86.2 (emphasis added).  Pursuant to the specific language of the Rule, this Court declines to examine the costs requested by Plaintiff.

Although the Court cannot use the legislative history to find a waiver of sovereign immunity in this case, it was clearly Congress' intent in passing the EAJA to hold the United States to the same standards for violations of procedural rules and abuses of the litigation process as private litigants.  *See*, *e.g.*, S. REP. NO. 96-253, at 4 (Star Print 1979) (Under the EAJA "[attorney] [f]ees may also be recovered against the United States under Rule 37, [FRCP], which provides for sanctions for failure to make discovery[,] and under the terms of any Federal statute which authorizes awards against private parties unless the statute expressly provides otherwise. There appears to be no justification for exempting the United States in these situations; the change simply reflects the belief that, at a minimum, the United States should be held to the same standards in litigating as private parties."); H.R. REP. NO. 96-1418, at 9 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4987 ("[A]t a minimum, the United States should be held to the same standards in litigating as private parties.  As such, it is consistent with the history of [§] 2412 which reflects a strong movement by Congress toward placing the Federal Government and civil litigants on a completely equal footing.").  In spite of this legislative history, this Court holds that the waiver of sovereign immunity in § 2412(b) does not pass the strict statutory construction standard articulated by *Lane v. Pena* for waiver of sovereign immunity as to damages for contempt under this Court's Rule 86.2.

As detailed in Plaintiff's submission to the Court, Plaintiff's counsel worked diligently to discover the facts surrounding the liquidation of the subject entries and to inform the Court of the progress of the parties in resolving this matter.  (Pl.'s Mem. on Damages Ex. A.)  However, because of the restrictions placed on this Court by the doctrine of sovereign immunity, this Court does not possess jurisdiction to award attorney fees to Plaintiffs as damages for Defendant's

contumacious acts.[9]

## CONCLUSION

Defendant's Motion to Vacate the Court's Judgment of July 16, 2003, is denied. Based

on the Court's lack of jurisdiction under the doctrine of sovereign immunity, Plaintiff's request

---

[9] The broader question presented by the circumstances of this case, the Government's immunity to monetary sanctions for violation of court orders, continues to be debated among the circuits. One legal commentator has noted that "[c]ourts have given uncertain and varying indications on the applicability of sovereign immunity in the contempt context." Recent Case, 108 HARV. L. REV. 965, 970 n.34 (1995) (comparing *United States v. Horn*, 29 F.3d 754, 765 n.13 (1ˢᵗ Cir. 1994) ("The better reasoned decisions hold that, when [sovereign immunity and the court's inherent supervisory powers] lock horns, contempt is barred by sovereign immunity.") with *Armstrong v. Executive Office of The President*, 821 F. Supp. 761, 773 (D.D.C. 1993) ("The Court is aware that imposition of monetary sanctions against the federal government often is barred by the doctrine of sovereign immunity. However, . . . the Court finds the doctrine inapplicable to the imposition of coercive fines.), *rev'd on other grounds*, 1 F.3d 1274, 1290 & n.13 (D.C. Cir. 1993)). *See also*, *Coleman v. Espy*, 986 F.2d 1184, 1191 (8th Cir. 1993) ("[W]e will not imply into [18 U.S.C. § 401] an express waiver of sovereign immunity for the federal government to be sued for civil compensatory contempt."); *Barry v. Bowen*, 884 F.2d 442, 444 (9th Cir. 1989) (reasoning that the court could not find "anything which suggests that the United States expressly has waived its sovereign immunity with respect to contempt sanctions.")

Additionally, the circuits cannot agrees on whether sovereign immunity bars the courts from imposing sanctions against the Government under the FRCP for violations of court orders. One judge in the Eighth Circuit has noted that "[i]n recent decisions dealing with the government's sovereign immunity against monetary sanctions imposed under various rules of civil and appellate procedure, several circuit courts have condoned awards of attorney fees and costs against the federal government despite the absence of express waivers." *McBride v. Coleman*, 955 F.2d 571, 582 n.8 (8ᵗʰ Cir. 1992) (dissenting opinion of Chief Judge Lay) (citing *Adamson v. Bowen*, 855 F.2d 668, 672 (10ᵗʰ Cir. 1988) (rejecting the Government's claim of sovereign immunity to FRCP Rule 11 sanctions finding a waiver under the EAJA); *Mattingly v. United States*, 939 F.2d 816, 818 (9ᵗʰ Cir. 1991) (affirming Rule 11 sanctions against the Government despite sovereign immunity objections and explicitly rejecting the EAJA theory relied upon by the Tenth Circuit, grounding its opinion on the FRCP alone); *United States v. Nat'l Med. Enters.*, 792 F.2d 906 (9ᵗʰ Cir. 1986) (upholding compensatory sanctions against the Government under FRCP Rule 37(b)); *In re Good Hope Indus.*, 886 F.2d 480 (1ˢᵗ Cir. 1989) (affirming an award against the Government under Federal Rule of Appellate Procedure 38)).

Such disparate application of the doctrine of sovereign immunity for violations of court orders invites Congressional intervention.

for attorney fees as damages for contempt is denied.


                                                    /s/ Gregory W. Carman
                                                Judge

Dated: April 28, 2004
       New York, New York